UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 06-20459-CIV-GOLD-McALILEY

MONTICELLO INSURANCE COMPANY,

      Plaintiff/Counter-Defendant,

vs.

CITY OF MIAMI BEACH; ISRAEL POLEYEFF,
as Personal Representative of the Estate of
Eugenie Poleyeff; and, FREDERICA BREAUX,
as Administratix of the Estate of Zachary Charles
Breaux,

      Defendants/Counter-Plaintiffs.

_____/

### ORDER DENYING MONTICELLO INSURANCE COMPANY'S
### MOTION TO DISMISS COUNTERCLAIM

THIS CAUSE came upon the Court on Plaintiff/Counter-Defendant Monticello

Insurance Company's ("Counter-Defendant" or "Monticello") Motion to Dismiss

Counterclaim [DE 82], filed November 19, 2007. The parties have filed a response and

reply. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 based on the parties

diversity of citizenship.[1] After reviewing the parties' pleadings and applicable case-law, I

conclude that oral argument is not necessary, and that Monticello's motion must be denied.

### I. Background

The relevant facts as alleged in Counter-Plaintiffs' Counterclaim [DE 77], taken as

_____

[1]

Israel Poleyeff, as Personal Representative of the Estate of Eugenie Poleyeff ("Poleyeff"),
is a citizen of the State of New Jersey. Frederica Breaux, as Administratix of the Estate
of Zachary Charles Breaux ("Breaux"), is a citizen of the State of Texas. Monticello is a
corporation incorporated under the laws of Delaware with its principal place of business in
the State of California. The City of Miami Beach ("Miami Beach") is a political subdivision
of the State of Florida. (Counterclaim, DE 77 at ¶¶ 3-6).

true for purposes of considering a Motion to Dismiss, are as follows:

On February 20, 1997, Eugenie Poleyeff and her husband, guests at the Saxony Hotel in Miami Beach, walked three blocks to the beach area behind the former Seville Hotel located at Collins and 29th Street and rented a beach chair and umbrella from a concessionaire, Hurricane Beach Rentals. (Counterclaim, ¶ 11 & Ex. B). Monticello had issued a general liability insurance policy to Hurricane Beach Rentals, which policy was effective December 9, 1996. (*Id.* at ¶ 7). According to Counter-Plaintiffs, Endorsement Form M4011, entitled "Additional Insured Endorsement - Designated Locations" amends the "persons insured" provision of the policy to include Miami Beach as an additional insured. (*Id.* at ¶ 8).

Zachary and Frederica Breaux, guests at the Seville Hotel, had also rented beach lounges from Hurricane Beach Rentals on February 20, 1997, and Mrs. Breaux though that the employees of the concessionaire were lifeguards. (*Id.* at ¶ 12, & Ex. B). According to Counter-Plaintiffs, Mrs. Breaux would not have used the beach in an unguarded location. (*Id.* at ¶ 12).

While swimming in the ocean adjacent to the 29th Street beach area, Mrs. Poleyeff was caught in rip currents. (*Id.* at Ex. B). Upon hearing her calls for help, Zachary Breaux attempted to rescue her. (*Id.*). Mr. Breaux was also caught in the rip currents, and both Mrs. Poleyeff and Mr. Breaux drowned. (*Id.* at Ex. B).

Breaux and Poleyeff filed separate lawsuits in Miami-Dade County Circuit Court against Miami Beach arising out of the drowning deaths. (*Id.* ¶ 9). The trial court granted summary judgment against Breaux and Poleyeff in favor of Miami Beach. (*Id.* ¶ 10). The

2

Florida Third District Court of Appeals affirmed the trial court. (*Id.*). The Florida Supreme Court reversed. (*Id.*). In doing so, the Florida Supreme Court held that Miami Beach owed a duty of care to Mr. Breaux and Ms. Poleyeff because the City was operating a "public swimming area." (*Id.*). The opinion further stated that

> [o]f even greater significance, the City licensed a concessionaire to rent beach chairs, umbrellas, and watercraft at this location, thereby deriving revenue from the public's use of this particular beach area.

(*Id.*).

On January 31, 2006, following the Florida Supreme Court's decision, Miami Beach sent a letter to Monticello demanding that Monticello furnish a defense to the City in the lawsuits filed by Breaux and Poleyeff. (*Id.* at ¶ 13). Monticello refused to defend and, on February 22, 2006, sent a letter to Miami Beach denying coverage for any defense or indemnity. (*Id.* at ¶ 14). Thereafter, on or about October 23, 2007, Breaux and Poleyeff each reached settlement agreements with Miami Beach. (*Id.* at ¶ 15).

Breaux agreed to settle for the total sum of Five Million Dollars ($5,000,000.00), of which Miami Beach has agreed to pay One Hundred Sixty Thousand Dollars ($160,000.00). The sum is intended to compensate the surviving spouse of Mr. Breaux and his three surviving minor children – all of whom witnessed the drowning – as well as the Estate of Zachary Breaux. (*Id.* at ¶ 16). Economist Dr. David R. Williams has opined that the present money value of the economic damages resulting from Mr. Breaux's death amounts to Six Million Two Hundred Sixty-Nine Thousand Four Hundred Fifty Dollars ($6,269,450.00). (*Id.* at ¶ 17). In addition, Miami Beach assigned to Breaux any and all rights it has against Monticello, including any and all rights to attorney's fees, as a result

3

of the refusal to defend, indemnify and/or provide insurance coverage with regards to the lawsuit filed by Breaux. (*Id.* at ¶ 20).

Poleyeff has agreed to settle for the total sum of Seven Hundred Fifty Thousand Dollars ($750,000.00). (*Id.* at ¶ 18). Miami Beach has agreed to pay Forty Thousand Dollars ($40,000.00) of the total amount. (*Id.*). Dr. Williams has estimated that the present money value of economic damages resulting from Mrs. Poleyeff death to be Four Hundred Eighty-Seven Five Hundred Four Dollars ($487,504.00), exclusive of medical and funeral expenses. (*Id.* at ¶ 19). In addition, Miami Beach assigned to Poleyeff any and all rights it has against Monticello, including any and all rights to attorney's fees, as a result of the refusal to defend, indemnify and/or provide insurance coverage with regards to the lawsuit filed by Poleyeff. (*Id.* at ¶ 20).

In their Counterclaim, Counter-Plaintiffs seek judicial declarations as follows: (1) that at all material times the subject insurance policy provided coverage to Miami Beach as an additional insured;[2] (2) that Monticello owed Miami Beach a duty to defend it in the underlying wrongful death actions; (3) that Monticello wrongfully refused to defend Miami Beach in such lawsuits; (4) that the settlement agreements are reasonable under the circumstances and made in good faith; and, (5) that as a result of Monticello's wrongful refusal to defend Miami Beach, Monticello is liable to Breaux and Poleyeff for the amounts still owed under the settlement agreements, and to Miami Beach in the sum of Two Hundred Thousand Dollars ($200,000.00) plus interest. (*Id.* ¶¶ 21-28).

---

[2]

The underlying lawsuit was brought by Monticello as an action for declaratory judgment to determine its rights and obligations under the insurance contract with Hurricane Beach Rentals. In its claim, Monticello denies coverage.

Monticello has filed a Motion to Dismiss Counterclaim, arguing that under Florida law, the settlement agreements are unenforceable because they are necessarily unreasonable and not made in good faith as a matter of law. In addition, Monticello argues that the settlement agreements are unenforceable because they are illusory in that they lack consideration and factually fall outside the scope of a valid *Coblentz* agreement as recognized by Florida law.

## II. Standard of Review

In determining whether to grant a motion to dismiss, the court must accept all the factual allegations in the complaint as true and evaluate all inferences derived from those facts in the light most favorable to the plaintiff. *Hoffend v. Villa*, 261 F.3d 1148, 1150 (11th Cir. 2001).

Although a plaintiff need not state in detail the facts upon which he bases his claim, Fed. R. Civ. P. 8(a)(2) "still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 n.3 (2007). In other words, a plaintiff's pleading obligation requires "more than labels and conclusions." *Id.* at 1964-65; *see also Pafumi v. Davidson*, No. 05-61679-CIV, 2007 WL 1729969, at *2 (S.D. Fla. June 14, 2007). The previous standard that there be "no set of facts" before a motion to dismiss is granted has thus been abrogated in favor of the requirement that a pleading must be "plausible on its face." *Bell Atl.*, 127 S. Ct. at 1968, 1974 (discussing *Conley v. Gibson*, 355 U.S. 41 (1957)); *see also, Watts v. Fla. Int'l Univ.*, No. 05-13852, 2007 U.S. App. LEXIS 19555, at **12-14 (11th Cir. Aug. 17, 2007) ("While Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because it strikes a savvy

5

judge that actual proof of those facts is improbable, the factual allegations must be enough to raise a right to relief above the speculative level.") (citing *Bell Atl.*, 127 S. Ct. at 1965)(internal quotations omitted)). In order to survive a motion to dismiss, the Plaintiff must have "nudged [her] claims across the line from conceivable to plausible." *Bell Atl.*, 127 S. Ct. at 1974. As discussed more fully below, applying these principles to the facts of this case, I deny Monticello's Motion to Dismiss Counterclaim.

## III.   Analysis

In *Coblentz v. American Surety Company of New York*, 416 F.2d 1956 (5th Cir. 1969), the former Fifth Circuit held that "an insurer which had refused to handle its insured's defense, thereby leaving its insured to his own resources, was bound by the terms of a negotiated final consent judgment entered against its insured." *U.S. Fire Ins. Co. v. Hayden Bonded Storage Co.,* 930 So. 2d 686, 690 (Fla. 4th DCA 2006). In Florida, to recover under a *Coblentz* agreement, the injured party must prove: (1) coverage; (2) wrongful refusal to defend; and, (3) that the settlement was reasonable and made in good faith." *Chomat v. Northern Ins. Co.*, 919 So. 2d 535, 537 (Fla. 3rd DCA 2006) (citing *Quintana v. Barad*, 528 So. 2d 1300, 1301 n.1. (Fla. 3d DCA 1988) (citing *Steil v. Fla. Physicians' Ins. Reciprocal*, 448 So. 2d 589, 592 (Fla. 2d DCA 1984)). To be enforceable, a *Coblentz* agreement does not require the entry of a consent judgment in addition to an agreement that the plaintiff will seek only to execute against the insured's liability policy. *Steil,* 448 So. 2d at 591. Florida courts uphold the agreement if a covenant to seek relief only from the insurer exists between the parties. *Id.* The injured party carries the initial burden of making a *prima facie* showing of reasonableness and lack of bad faith. *Chomat,*

6

919 So. 2d at 537  However, the ultimate burden of proof lies with the insurance carrier. *Id.*

1.     Whether the Settlement Agreements are Unreasonable as a Matter of Law

Whether a settlement is reasonable is determined under the 'reasonable person' standard. *Chomat*, 919 So.2d at 538. "[P]roof of reasonableness is ordinarily established through use of expert witnesses to testify about such matters as the extent of the defendant's liability, the reasonableness of the damages amount in comparison with compensatory awards in other cases, and the expense which would have been required for the settling defendants to defend the lawsuit." *Id.*

Although it acknowledges that expert testimony is ordinarily required to establish reasonableness, Monticello argues that Miami Beach acted unreasonable since section 768.28(5), Florida Statutes, limits the city's potential liability to $200,000.00 per incident. In addition, Monticello argues that Miami Beach could not have been fearful of the possibility that the Florida legislature would pass special claim bills authorizing payment of the portion of any judgment exceeding the $200,000.00 limitation since claim bills are paid with monies from the State of Florida's revenue fund.  Miami Beach responds that the settlement was reasonable because, under the facts of the case, it was reasonable for Miami Beach to expect a jury verdict that could reach record levels. Moreover, according Miami Beach, units of local government, including municipalities, may be responsible for payment of claim bills out of their own funds. *See City of Miami v. Valdez*, 847 So.2d 1005 (Fla. 3d DCA 2003) (discussing a claims bills that authorized and directed the City to appropriate from City funds amounts sufficient to pay $4.9 million over three years);

7

*Wagner v. Orange County*, 960 So.2d 785 (Fla. 5th DCA 2007) ("A claim bill is not an action at law, but rather is a legislative measure that directs the Chief Financial Officer of Florida, or if appropriate, a unit of local government, to pay a specific sum of money to a claimant to satisfy an equitable or moral obligation."). Monticello's argument that Miami Beach acted unreasonable as a matter of law since its potential liability could not exceed $200,000.00 is therefore without merit. In reaching this conclusion I make no determination as to whether Miami Beach would have been required to use its own funds to pay these claim bills, had they been requested and granted; nor do I make a determination as to the reasonableness of the settlement agreements. I merely conclude that at this stage of the proceedings it has not been established that the settlement agreements were unreasonable as a matter of law.

2.     Whether the Settlement Agreements were Negotiated in Good Faith

While Florida courts have not provided a comprehensive definition of "good faith" in the context of *Coblentz* agreements, courts have held that a "bad faith claim includes a false claim, or collusion in which the plaintiffs agree to share the recovery with the insured." *Chomat*, 919 So.2d at 538. Monticello argues that bad faith can be inferred by the fact that the settlements were unreasonable in amount relative to Miami Beach's realistic liability in the tort suit. For the reasons discussed above, however, this argument fails.

Monticello also points to decisions of other courts in which bad faith has been found where an agreement is reached with a lack of opposition between a plaintiff and an insured. *See, e.g., Cont'l Cas. Co. v. Hempel,* 4 Fed. Appx. 703, 717 (10th Cir. 2001) (stating that an agreement "becomes collusive when the purpose is to injure the interests of an absent or nonparticipating party, such as an insurer or nonsettling defendant. Among

8

the indicators of bad faith and collusion are unreasonableness, misrepresentation, concealment, secretiveness, lack of serious negotiations on damages, attempts to affect the insurance coverage, profit to the insured, and attempts to harm the interest of the insurer."); *Sargent v. Johnson*, 551 F.2d 221, 232 (8th Cir. 1977). Monticello argues that because Miami Beach settled for the full amount of the parties' alleged damages, it is clear that the agreements were contrived to optimize the potential benefits of the claimants to the detriment of Monticello. Monticello asks this Court to hold, in essence, that any time a person settles a claim for the full amount of the alleged damages, the settlement was negotiated in bad faith. That is not the case. Whether the settlement agreements were entered into in bad faith is a factual dispute in this case that cannot be resolved at this early stage.

3.    Whether the Settlement Agreements are Illusory

Monticello's final argument is that the agreements lack consideration because Breaux and Poleyeff could not collect more than $200,000.00 from Miami Beach. For the reasons discussed in section III.1 of this Order, this argument fails. Monticello also argues that the counterclaim must be dismissed because neither Breaux nor Poleyeff expressly released Miami Beach from personal liability. As a result, according to Monticello, if Breaux and Poleyeff are unsuccessful in their claim against Monticello, they can pursue their tort cases against Miami Beach and obtain a judgment against it in excess of its $200,000.00 statutory limit on liability.

The Settlement Agreements, copies of which were attached to the Counterclaim and may therefore be considered in deciding a motion to dismiss, *see Bickley v. Caremark Rx, Inc.*, 461 F.3d 1325, 1329 (11th Cir. 2006), provide that Breaux and Poleyeff "covenant[]

9

not to execute on or otherwise claim, pursue or collect this settlement from Miami Beach in excess of [$40,000.00/$160,0000.00] under any circumstances, regardless of the outcome fo the litigation against Monticello or any other party." *See* Settlement Agreement and Stipulation, Counterclaim at Ex. C at ¶ 3, and Ex. D at ¶ 3.  The plain and unambiguous language of the settlement agreements defeats any argument that Breaux and Poleyeff could seek recovery from Miami Beach in the event that they lost their case against Monticello.  Moreover, Florida courts have held that the execution of a consent judgment is not required to uphold a promise that the injured party would only seek to execute the agreement against the insured's liability policy. *See Steil,* 448 So. 2d at 591. Thus, Breaux and Poleyeff's covenant not to execute the agreement against Miami Beach in excess of $200,000.00 is not illusory.

## IV.   Conclusion

Being fully advised and having considered the pertinent portions of the record and applicable law, it is hereby ORDERED and ADJUDGED that Monticello's Motion to Dismiss the Counterclaim [DE 82] is DENIED.

DONE AND ORDERED, in Chambers, in Miami, Florida, this ____ day of April, 2008.


THE HONORABLE ALAN S. GOLD
UNITED STATES DISTRICT JUDGE

cc:
U.S. Magistrate Judge Chris M. McAliley
All Counsel of Record

10