1

2

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

3

Case 06-20459-CIV-GOLD

4

5

6
*MONTICELLO INSURANCE COMPANY*,
a Delaware Corporation,

7
**COURTROOM 11-1**

Plaintiff,

8
**MIAMI, FLORIDA**

v.

9
**DECEMBER 11, 2009**

*CITY OF MIAMI BEACH*; *ISRAEL POLEYEFF*,

10
as Personal Representative of Eugenie
Poleyeff; and *FREDERICA BREAUX*, as

11
Administratrix of the Estate of Zachary
Charles Breaux,

12
**(Pages 1 - 44)**

Defendants.

13

14
*FREDERICA BREAUX*, as Administratrix of the
Estate of Zachary Charles Breaux; *ISRAEL*

15
*POLEYEFF*, as Personal Representative of
Eugenie Poleyeff; and *THE CITY OF MIAMI BEACH*,

16

Counterclaimants,

17

v.

18

*MONTICELLO INSURANCE COMPANY*, a Delaware

19
corporation,

20

Counterdefendant.

21

22
## TRANSCRIPT OF ORAL MEMORANDUM DECISION
## BEFORE THE HONORABLE ALAN S. GOLD

23
## UNITED STATES DISTRICT JUDGE

24

25

1  APPEARANCES:

2  **FOR THE PLAINTIFF:**          **MICHAEL B. BUCKLEY, ESQ.**
                                    **LAUREN STITT CURTIS, ESQ.**
3                                   *Buckley & Fudge*
                                    650 16th Street North
4                                   St. Petersburg, FL 33705      727.490.3100
                                            (Fax)  727.490.3101
5                                   mbuckley@buckleyandfudge.com
                                    lcurtis@buckleyandfudge.com
6

7  **FOR THE DEFENDANTS:**

8  *City of Miami Beach*           **DONALD MARK PAPY, ESQ.**
                                    *City of Miami Beach*
9                                   1700 Convention Center Drive, 4th Floor
                                    Miami, FL  33139            305.673.7470
10                                  yamilexmorales@miamibeachfl.gov

11

12 *Israel Poleyeff*               **ANDREW BRYAN YAFFA, ESQ.**
                                    *Grossman Roth, P.A.*
                                    Las Olas Center II
13                                  350 East Las Olas Boulevard, Suite 960
                                    Fort Lauderdale, FL 33301      954.767.8200
14                                          (Fax)    954.764.1866
                                    aby@grossmanroth.com
15

16 *Frederica Breaux*             **HOWARD LAWRENCE POMERANTZ, ESQ.**
                                    *Abramowitz & Pomerantz*
17                                  7800 West Oakland Park Boulevard, Suite 101
                                    Sunrise, FL  33351             954.572.7200
18                                          (Fax)    954.748.6488
                                    howard@abrpom.com
19

20 **REPORTED BY:**               **JOSEPH A. MILLIKAN, RPR-CM-FCRR**
                                    *Official United States Court Reporter*
21                                  *Federally Certified Realtime Reporter*
                                    400 North Miami Avenue, Suite 11-1
22                                  Miami, FL  33128             305.523.5588
                                            (Fax)    305.523.5589
23                                  jamillikan@aol.com

24

25

1  **TABLE OF CONTENTS**

2                                                                        Page

3  Reporter's Certificate ................................... 37

4

5                        **CITATIONS**

6                                                                        Page
   *Chomat v. Northern Insurance Company of New York*, 919
7  So.2d 535 ................................................ 7

8  *Holmes Insurance Company v. Advanced Machine Company*,
   443 So.2d 165 ........................................... 11
9
   *St. Paul Fire and Marine Insurance Company v. Thomas*,
10 272 So.2d 117 ........................................... 10

11 *Steil v. Florida Physicians Inc. Reciprocal*, 448
   So.2d 589-592 ........................................... 30
12

13

14

15

16

17

18

19

20

21

22

23

24

25

| | | |
|---|---|---|
| 09:58:07 | 1 | **THE COURT SECURITY OFFICER:**  All rise. |
| 09:58:24 | 2 | **THE COURT:**  On Case 06-20459, appearances for this |
| 09:58:30 | 3 | morning's session, please. |
| 09:58:31 | 4 | **MR. POMERANTZ:**  Howard Pomerantz on behalf of |
| 09:58:33 | 5 | Frederica Breaux. |
| 09:58:34 | 6 | **MR. YAFFA:**  Judge, good morning.  Andrew Yaffa on |
| 09:58:36 | 7 | behalf of the estate of Eugenie Poleyeff. |
| 09:58:42 | 8 | **MR. BUCKLEY:**  Good morning, Judge, Mike Buckley and |
| 09:58:43 | 9 | Lauren Curtis for Monticello. |
| 09:58:45 | 10 | **THE COURT:**  Good morning. |
| 09:58:47 | 11 | **MR. PAPY:**  *[Via teleconference]*  Donald Papy on behalf |
| 09:58:48 | 12 | of the City of Miami Beach. |
| 09:58:50 | 13 | **THE COURT:**  Thank you.  Other appearances by phone? |
| 09:58:54 | 14 | **MRS. BREAUX:**  *[Via teleconference]*  Frederica Breaux. |
| 09:58:57 | 15 | **MR. POLEYEFF:**  *[Via teleconference]*  Israel Poleyeff. |
| 09:59:00 | 16 | **THE COURT:**  All right.  Thank you. |
| 09:59:04 | 17 | This morning involves the order of the Court on the |
| 09:59:08 | 18 | proceedings that we have just concluded, so the following is an |
| 09:59:14 | 19 | oral memorandum decision setting forth my findings of fact and |
| 09:59:20 | 20 | conclusions of law on Phase 2 of this bifurcated insurance |
| 09:59:25 | 21 | dispute. |
| 09:59:27 | 22 | This matter, as I said, is before the Court on Phase 2 |
| 09:59:32 | 23 | of a bifurcated proceeding which primarily addressed whether |
| 09:59:37 | 24 | the respective $5 million and $750,000 Coblentz settlement |
| 09:59:44 | 25 | agreements between the Breaux and Poleyeff estates and the City |

| | | |
|---|---|---|
| 09:59:48 | 1 | of Miami Beach are reasonable and were entered in good faith. |
| 09:59:53 | 2 | By order previously entered March 10th, 2009, at |
| 09:59:58 | 3 | Docket Entry 199, I had concluded after a nonjury trial that |
| 10:00:04 | 4 | the City of Miami Beach qualified for coverage as an additional |
| 10:00:09 | 5 | insured under an insurance policy issued by Monticello |
| 10:00:14 | 6 | Insurance Company to Hurricane Beach Rentals, a beach |
| 10:00:20 | 7 | concessionaire, for two drownings that occurred in the Atlantic |
| 10:00:27 | 8 | Ocean. |
| 10:00:28 | 9 | These proceedings were published at 2009 WL 667454 by |
| 10:00:38 | 10 | order dated March 11th, 2009, in the case Monticello Insurance |
| 10:00:42 | 11 | Company v. City of Miami Beach. |
| 10:00:46 | 12 | I adopt and incorporate this prior order together with |
| 10:00:50 | 13 | its findings of facts and legal conclusions as part of these |
| 10:00:56 | 14 | Phase 2 proceedings. |
| 10:00:59 | 15 | The Phase 2 nonjury trial was held before the Court on |
| 10:01:04 | 16 | October 3rd, 14th, 15th and 19th, 2009.  Closing arguments were |
| 10:01:10 | 17 | held on November 24th, 2009. |
| 10:01:15 | 18 | Prior to the nonjury trial, the parties filed an |
| 10:01:18 | 19 | extensive pretrial stipulation containing a detailed statement |
| 10:01:22 | 20 | of uncontested facts and issues of law upon which there were |
| 10:01:27 | 21 | agreements.  This is at Docket Entry 255. |
| 10:01:33 | 22 | I adopt and incorporate these uncontested facts and |
| 10:01:38 | 23 | legal conclusions as part of my oral ruling on the Phase 2 |
| 10:01:41 | 24 | proceedings.  I see no need to restate them other than as |
| 10:01:47 | 25 | necessary to explicate my oral rulings as I am required to do |

| | | |
|---|---|---|
| 10:01:52 | 1 | under Federal Rule of Civil Procedure 52(a)(1). |
| 10:01:57 | 2 | In conjunction with the Phase 2 nonjury trial, the |
| 10:02:01 | 3 | parties filed numerous exhibits and depositions which were |
| 10:02:05 | 4 | admitted into the record essentially without objection. |
| 10:02:10 | 5 | I also heard oral testimony from the following expert |
| 10:02:14 | 6 | and fact witnesses:  Mr. Donald F. Lamonica, estate expert |
| 10:02:21 | 7 | witness on claims bill procedures; Mr. Rickey Schultz, an |
| 10:02:27 | 8 | estate fact witness as well as expert witness; Mr. José Smith, |
| 10:02:32 | 9 | Esquire, Miami Beach City Attorney, both as an estate fact |
| 10:02:36 | 10 | witness and as a legal expert; Mrs. Susan Wolf, an estate fact |
| 10:02:45 | 11 | witness; Mr. Arthur Poleyeff, estate fact witness; Mr. Michael |
| 10:02:53 | 12 | Haggard, Esquire, estate expert legal witness; Ms. Judith Lee |
| 10:02:58 | 13 | Weinstein, Esquire, former Miami Beach First Assistant City |
| 10:03:03 | 14 | Attorney, as an estate fact witness and legal expert; |
| 10:03:08 | 15 | Mr. Michael Olin, Esquire, estate expert witness; Rabbi Israel |
| 10:03:14 | 16 | Poleyeff, estate fact witness; Mrs. Frederica Breaux, estate |
| 10:03:19 | 17 | fact witness; Mr. Robert Dewitt Trammell, Monticello's expert |
| 10:03:24 | 18 | witness on claims bills; and Mr. Peter Shukat, Monticello's |
| 10:03:35 | 19 | expert witness on Mr. Breaux's alleged lack of economic |
| 10:03:39 | 20 | damages. |
| 10:03:41 | 21 | I start with a discussion of the law on Coblentz |
| 10:03:46 | 22 | agreements.  The parties agree that to enforce a Coblentz |
| 10:03:50 | 23 | agreement, an injured party must prove: |
| 10:03:53 | 24 | 1.  Coverage. |
| 10:03:54 | 25 | 2.  The insurer wrongfully refused to defend the City |

10:03:58   1        in the underlying state litigation, and

10:04:02   2            3.  The settlement is reasonable and was made in good

10:04:06   3        faith.

10:04:07   4            Both parties cite to Chomat v. Northern Insurance

10:04:13   5    Company of New York, 919 So.2d 535, 2006 District Court of

10:04:23   6    Appeals decision.

10:04:29   7            As indicated, I have concluded in the Phase 1

10:04:32   8    proceedings that there was coverage.  This leaves the remaining

10:04:36   9    two issues for determination.

10:04:39   10            While the parties argue a number of points with regard

10:04:44   11   to these remaining issues, Monticello contends and the estates

10:04:50   12   agree that the primary issue in the Phase 2 proceeding is

10:04:53   13   whether it was reasonable for the City of Miami Beach, a

10:04:56   14   sovereign entity, to enter into a Coblentz type of settlement

10:05:00   15   agreement above its $200,000 statutory sovereign immunity cap.

10:05:06   16            All agree that Florida law applies and that this is an

10:05:10   17   issue of first impression in Florida.  There are no cases on

10:05:14   18   point in the Eleventh Circuit or in the Florida State Courts.

10:05:18   19            Because this is a diversity case, I must apply the law

10:05:23   20   as though it was to be decided by the Florida Supreme Court if

10:05:26   21   determining the issue.

10:05:30   22            I now turn to a discussion of the second issue,

10:05:34   23   whether Monticello wrongfully refused to defend.

10:05:39   24            Monticello contends that its refusal to defend the

10:05:43   25   City of Miami Beach in the underlying state case upon advice of

| | | |
|---|---|---|
| 10:05:47 | 1 | counsel was not wrongful where there was a bona fide coverage |
| 10:05:52 | 2 | dispute as to whether the City qualified as an additional |
| 10:05:54 | 3 | insured under its policy and where Monticello immediately filed |
| 10:06:00 | 4 | a subject declaratory judgment action seeking to resolve the |
| 10:06:04 | 5 | coverage issue. |
| 10:06:05 | 6 | I reject Monticello's position as without legal |
| 10:06:09 | 7 | support under Florida law.  I further conclude it otherwise |
| 10:06:12 | 8 | lacks legal merit under the circumstances. |
| 10:06:15 | 9 | I conclude that Monticello's refusal to defend the |
| 10:06:19 | 10 | City against allegations for which this Court has found |
| 10:06:22 | 11 | coverage to actually exist was wrongful.  It was not excused, |
| 10:06:28 | 12 | even if its decision was based upon advice of counsel, and |
| 10:06:32 | 13 | notwithstanding that Monticello has sought declaratory relief |
| 10:06:38 | 14 | in this Court on the liability issue before the Coblentz |
| 10:06:40 | 15 | agreements were executed by the parties. |
| 10:06:43 | 16 | Here there is no issue of fact regarding Monticello's |
| 10:06:47 | 17 | refusal to defend.  Following the Florida Supreme Court's |
| 10:06:51 | 18 | opinion in the underlying state action and its remand to the |
| 10:06:55 | 19 | state court, counsel for both the Breaux and Poleyeff estates |
| 10:06:59 | 20 | sent a letter to Monticello demanding the $1 million policy |
| 10:07:04 | 21 | limit to settle both cases. |
| 10:07:07 | 22 | On July 29th, 2005, more than one month after, |
| 10:07:13 | 23 | Monticello sent a letter to Breaux and Poleyeff rejecting their |
| 10:07:17 | 24 | demand on the ground that the City of Miami Beach did not |
| 10:07:19 | 25 | qualify as an additional insured under the Monticello insurance |

| 10:07:23 | 1 | policy issued to Hurricane Beach Rentals. |
| 10:07:26 | 2 | On January 31st, 2006, the City of Miami Beach made |
| 10:07:30 | 3 | its own written demand upon Monticello for a defense in the |
| 10:07:35 | 4 | pending wrongful death lawsuits brought by the Breaux and |
| 10:07:40 | 5 | Poleyeff estates. |
| 10:07:41 | 6 | By letter of February 22, 2006, Monticello denied a |
| 10:07:45 | 7 | defense and denied coverage to the City of Miami Beach in these |
| 10:07:49 | 8 | lawsuits. |
| 10:07:50 | 9 | This left the City of Miami Beach on its own in the |
| 10:07:54 | 10 | state wrongful death cases and at risk for a significant |
| 10:07:58 | 11 | adverse jury award. |
| 10:08:00 | 12 | Instead of offering a defense in the state actions, |
| 10:08:04 | 13 | Monticello filed a subject declaratory judgment action asking |
| 10:08:09 | 14 | for a judicial declaration as to the parties' rights and |
| 10:08:12 | 15 | obligations under the subject Monticello insurance policy. |
| 10:08:17 | 16 | Monticello did not ask for a stay of the state court |
| 10:08:20 | 17 | wrongful death losses until the coverage matter could be |
| 10:08:24 | 18 | resolved, nor was it in the interest of the City to agree or to |
| 10:08:28 | 19 | accept such a stay. |
| 10:08:30 | 20 | No Florida case law supports the legal conclusion that |
| 10:08:34 | 21 | the City was obligated to wait for a declaration of rights |
| 10:08:38 | 22 | before entering into a Coblentz agreement when the insurer had |
| 10:08:42 | 23 | denied a defense in coverage and the City itself still faced a |
| 10:08:46 | 24 | potential large verdict and significant attorney fees to |
| 10:08:50 | 25 | outside counsel for a defense, especially when it properly |

| 10:08:54 | 1 | assessed that no real defense existed. |
| 10:08:58 | 2 | Here the estates and the City would have been willing |
| 10:09:16 | 3 | to settle with the insurer for the policy coverage of $1 |
| 10:09:20 | 4 | million which Monticello unequivocally denied. |
| 10:09:24 | 5 | At that point, Monticello proceeded at its own risk |
| 10:09:28 | 6 | and is not protected here by an advice of counsel defense.  As |
| 10:09:33 | 7 | stated by the Florida Fourth District Court of Appeals in |
| 10:09:36 | 8 | St. Paul Fire and Marine Insurance Company v. Thomas, 272 So.2d |
| 10:09:43 | 9 | 117, at Page 121, Note 7: |
| 10:09:47 | 10 | "An insurer which denies coverage on the mistaken but |
| 10:09:51 | 11 | honest belief that coverage does not exist does so at its |
| 10:09:55 | 12 | own risk." |
| 10:09:57 | 13 | Cert. was denied in that case by the Florida Supreme |
| 10:09:59 | 14 | Court at 282 So.2d 638.  In that case the Fourth District Court |
| 10:10:06 | 15 | of Appeal unequivocally held that the insurer's argument that |
| 10:10:10 | 16 | it did so upon advice of counsel is unavailing.  I concur with |
| 10:10:17 | 17 | this properly stated point of Florida law and I apply it here. |
| 10:10:23 | 18 | I next turn to the third issue, whether the Coblentz |
| 10:10:27 | 19 | settlements between the City and the Breaux and Poleyeff |
| 10:10:29 | 20 | estates were reasonable.  To address this issue, I need to |
| 10:10:34 | 21 | divide it into parts. |
| 10:10:36 | 22 | First, I will address the general Florida law |
| 10:10:39 | 23 | pertaining to reasonability of Coblentz agreements. |
| 10:10:44 | 24 | Second, I will consider whether the City was |
| 10:10:47 | 25 | objectively reasonable and prudent in concluding that a jury |

| | | |
|---|---|---|
| 10:10:51 | 1 | would find it causally liable for full damages to the estates. |
| 10:10:57 | 2 | Third, leaving aside for the moment the cap issue, I |
| 10:11:00 | 3 | will address whether the settlements in the amount of $5 |
| 10:11:03 | 4 | million to the Breaux estate and $750,000 to the Poleyeff |
| 10:11:09 | 5 | estate were both objectively reasonable in terms of the damage |
| 10:11:17 | 6 | amounts. |
| 10:11:17 | 7 | Finally, I will address whether the settlement by the |
| 10:11:19 | 8 | City was reasonable under the circumstances given the $200,000 |
| 10:11:23 | 9 | statutory cap and the necessity of processing a claims bill. |
| 10:11:30 | 10 | Let me restate.  Turning to the general applicable |
| 10:11:37 | 11 | law, I note that the parties agree on the general applicable |
| 10:11:42 | 12 | law in Florida regarding the validity and reasonability of |
| 10:11:48 | 13 | Coblentz agreements.  I cite to the pretrial statement at |
| 10:11:51 | 14 | Docket Entry 255 at Pages 16 through 17. |
| 10:11:56 | 15 | Under the cited case law, the determination of whether |
| 10:12:00 | 16 | the subject Coblentz agreements were both reasonable is made by |
| 10:12:05 | 17 | applying a reasonable person standard utilizing both objective |
| 10:12:10 | 18 | and subjective factors to a Florida municipal corporation such |
| 10:12:15 | 19 | as in this case, the City of Miami Beach. |
| 10:12:19 | 20 | Subjective factors include the degree of certainty of |
| 10:12:23 | 21 | the tortfeasor's liability, the risks of going to trial, and |
| 10:12:28 | 22 | the chances that the jury verdict might exceed the settlement |
| 10:12:31 | 23 | amount. |
| 10:12:32 | 24 | I cite to Holmes Insurance Company v. Advanced Machine |
| 10:12:36 | 25 | Company, 443 So.2d 165, Page 168, a decision by the Florida |

Oral Memorandum Decision

| | | |
|---|---|---|
| 10:12:43 | 1 | First DCA, 1983. |
| 10:12:46 | 2 | The list of factors, however, are not meant to be |
| 10:12:51 | 3 | exhaustive.  The test is whether a reasonable municipal |
| 10:13:04 | 4 | corporation in the position of the City of Miami Beach would |
| 10:13:06 | 5 | have settled for the amounts at issue. |
| 10:13:10 | 6 | Having been assigned and subrogated the City's claim |
| 10:13:15 | 7 | against Monticello, the estates have the burden of initially |
| 10:13:18 | 8 | going forward with the production of evidence sufficient to |
| 10:13:21 | 9 | make out a prima facie showing of reasonableness and lack of |
| 10:13:25 | 10 | bad faith even though the ultimate burden of proof rests upon |
| 10:13:31 | 11 | Monticello.  I cite again to the Chomat decision for support of |
| 10:13:36 | 12 | this proposition. |
| 10:13:38 | 13 | The parties further agree that under Florida law proof |
| 10:13:41 | 14 | of reasonableness is ordinarily established through the use of |
| 10:13:46 | 15 | expert witnesses to testify about such matters as the extent of |
| 10:13:49 | 16 | the defendant's liability, the reasonableness of the damage |
| 10:13:53 | 17 | amount in comparison with compensatory awards in other cases, |
| 10:13:57 | 18 | and the expenses which would have been required for the |
| 10:14:02 | 19 | settling defendants to defend the lawsuit. |
| 10:14:05 | 20 | What is in legal dispute between the parties is |
| 10:14:08 | 21 | whether Monticello is permitted to raise issues in the Phase 2 |
| 10:14:13 | 22 | proceeding concerning how the City conducted its defense in the |
| 10:14:19 | 23 | Breaux and Poleyeff cases, including whether the City should |
| 10:14:23 | 24 | have further litigated the case before settling, as well as |
| 10:14:28 | 25 | challenging the methods and strategies utilized by the City in |

| | | |
|---|---|---|
| 10:14:31 | 1 | defending the cases. |
| 10:14:33 | 2 | Given that I have determined that there was coverage |
| 10:14:36 | 3 | and Monticello had a duty to defend in the wrongful death cases |
| 10:14:40 | 4 | which it declined, I concur with the estates that under the |
| 10:14:45 | 5 | clear Florida law cited in Docket Entry 248, Pages 2 and 3, the |
| 10:14:52 | 6 | insurer cannot now complain about the conduct of the defense or |
| 10:14:56 | 7 | the City's right to settle the claims. |
| 10:15:00 | 8 | Florida law allows Coblentz agreements in order to |
| 10:15:04 | 9 | relieve an abandoned insured of exposure to the expense and |
| 10:15:08 | 10 | inconvenience of litigation, along with the negative publicity |
| 10:15:11 | 11 | of an adverse verdict, coupled with potentially crippling |
| 10:15:18 | 12 | financial burdens. |
| 10:15:19 | 13 | However, this general rule is tempered in this case by |
| 10:15:22 | 14 | the Coblentz test inquiring into reasonableness and good faith |
| 10:15:25 | 15 | which in my view also includes an inquiry into reasonableness |
| 10:15:29 | 16 | pertaining to liability and causation. |
| 10:15:32 | 17 | The inquiry is further complicated by the special |
| 10:15:35 | 18 | claims bill process which would have included an independent |
| 10:15:39 | 19 | review by a Special Master of all the issues that could have |
| 10:15:45 | 20 | been raised regarding whether a claims bill should issue and in |
| 10:15:48 | 21 | what amount. |
| 10:15:49 | 22 | For these reasons I have not limited the evidence at |
| 10:15:52 | 23 | the Phase 2 hearings as requested by the estates.  Rather, I |
| 10:15:56 | 24 | have heard evidence concerning the City's assessment of |
| 10:16:00 | 25 | negligence, causation and comparative negligence in the |

Oral Memorandum Decision

14

| | |
|---|---|
| 10:16:03 | 1 |
| 10:16:07 | 2 |
| 10:16:11 | 3 |
| 10:16:14 | 4 |
| 10:16:18 | 5 |
| 10:16:22 | 6 |
| 10:16:25 | 7 |
| 10:16:29 | 8 |
| 10:16:32 | 9 |
| 10:16:37 | 10 |
| 10:16:43 | 11 |
| 10:16:46 | 12 |
| 10:16:50 | 13 |
| 10:16:54 | 14 |
| 10:16:57 | 15 |
| 10:17:03 | 16 |
| 10:17:06 | 17 |
| 10:17:10 | 18 |
| 10:17:14 | 19 |
| 10:17:19 | 20 |
| 10:17:23 | 21 |
| 10:17:27 | 22 |
| 10:17:28 | 23 |
| 10:17:32 | 24 |
| 10:17:35 | 25 |

1  wrongful death cases, and I shall discuss these matters in this

2  order under the Coblentz test.

3       I now turn to a discussion of whether the City's

4  assessment that a jury would find it causally liable for the

5  drownings was objectively reasonable and prudent under

6  Coblentz.  I conclude it was.

7       I concur with and adopt the uncontradicted expert

8  testimony of Mr. Michael Olin, Esquire, and Mr. Michael

9  Haggard, Esquire, that following the Florida Supreme Court

10 remand, it was extremely likely that a Miami-Dade County jury

11 would find the City 100 percent liable for the deaths of

12 Mr. Breaux and Mrs. Poleyeff and would have returned a very

13 large verdict in favor of each estate and the survivors.

14      I further rely upon and adopt the testimony of the

15 City Attorney, Mr. José Smith, and the former Miami Beach First

16 Assistant City Attorney, Ms. Judith Weinstein, who

17 independently concluded and recommended to the City Commission

18 that, given the Florida Supreme Court opinion and the facts

19 established in the discovery process, the City was negligent;

20 that its negligence was the legal cause of each plaintiff's

21 damages; and that comparative negligence was not a valid

22 defense.

23      My own assessment of the record unequivocally supports

24 these conclusions as well.  I concur with Ms. Weinstein that

25 following the Florida Supreme Court decision, the City had no

December 11, 2009

| 10:17:40 | 1 | defense other than the $200,000 sovereign immunity cap. |
|---|---|---|

10:17:45  2        In its opinion the Florida Supreme Court had held that

10:17:48  3  the City, given the facts of the case, had an operational level

10:17:53  4  duty of care to warn the public of any dangerous conditions of

10:17:57  5  which it knew or should have known at the 29th Street beach

10:18:02  6  area.

10:18:03  7        Of equal importance, the Florida Supreme Court's

10:18:06  8  opinion established a road map to liability and placed the City

10:18:12  9  in a horrific posture to defend on remand.  This was Mr. Smith

10:18:16  10  and Ms. Weinstein's assessment and I agree with it.

10:18:19  11        Indeed, the additional facts established during these

10:18:22  12  proceedings only heightened the liability and causal situation

10:18:27  13  and the City's reasonableness and prudent decision to settle.

10:18:31  14        The evidence supports that the City had failed to warn

10:18:34  15  the Breauxs and Poleyeffs of dangerous rip currents and that

10:18:39  16  the 29th Street beach was unguarded.  The testimony of Miami

10:18:45  17  Beach lifeguards established that rip currents, which were

10:18:49  18  identifiable by lifeguards but not by the public, existed at

10:18:52  19  the 29th Street beach area at the time of the drownings.

10:18:56  20        Moreover, lifeguards at both 21st and 35th Street, the

10:19:01  21  two closest lifeguard stations to 29th Street where the

10:19:05  22  drownings occurred, had posted rip current warning flags to

10:19:11  23  keep people out of the water.

10:19:14  24        No such flags were posted at the 29th Street area,

10:19:19  25  although the adopted policies of the City called for the

Oral Memorandum Decision

| | | |
|---|---|---|
| 10:19:22 | 1 | posting of rip current warning flags at all public swimming |
| 10:19:26 | 2 | areas on days that rip currents were identified anywhere on |
| 10:19:31 | 3 | Miami Beach. |
| 10:19:31 | 4 | Thus, the City knew or should have known of dangerous |
| 10:19:34 | 5 | rip currents at 29th Street on the day of the drownings and |
| 10:19:38 | 6 | owed a duty to warn beachgoers, including the Breauxs and |
| 10:19:42 | 7 | Poleyeffs. |
| 10:19:43 | 8 | The City failed to give any warning.  The City also |
| 10:19:46 | 9 | knew or should have known that it created a dangerous condition |
| 10:19:50 | 10 | by virtue of making it appear that the 29th Street beach area |
| 10:19:53 | 11 | was a protected, guarded swimming area when, in fact, it was |
| 10:19:57 | 12 | unguarded. |
| 10:19:59 | 13 | In sum, applying both objective and subjective |
| 10:20:02 | 14 | criteria and based on the totality of the evidence presented, I |
| 10:20:06 | 15 | conclude that it was entirely reasonable and prudent for the |
| 10:20:09 | 16 | City to have assessed that a jury would have found that it was |
| 10:20:14 | 17 | negligent; that its negligent failure to warn was a proximate |
| 10:20:19 | 18 | cause of the drownings; and that neither Mr. Breaux or |
| 10:20:22 | 19 | Mrs. Poleyeff were comparatively negligent in any manner. |
| 10:20:28 | 20 | I now turn to the next issue, that is, aside from the |
| 10:20:31 | 21 | claims bill process was the City's settlement of the Breaux |
| 10:20:36 | 22 | estate claim for $5 million objectively reasonable in terms of |
| 10:20:42 | 23 | the damage amount agreed upon.  I conclude it was. |
| 10:20:47 | 24 | I base my conclusion on the expert testimony of |
| 10:20:50 | 25 | Michael Olin, Esquire, together with the factual testimony and |

Oral Memorandum Decision

17

| | | |
|---|---|---|
| 10:20:56 | 1 | the expert opinions and assessments of Mr. José Smith and |
| 10:20:59 | 2 | Ms. Judith Weinstein.  Both of these individuals are expert |
| 10:21:07 | 3 | personal injury attorneys who represented the City of Miami |
| 10:21:11 | 4 | Beach.  My conclusions are further supported by the testimony |
| 10:21:15 | 5 | of Mrs. Frederica Breaux. |
| 10:21:18 | 6 | In my view the City was objectively reasonable in its |
| 10:21:21 | 7 | assessment that a likely jury verdict for the Breaux estate |
| 10:21:26 | 8 | would easily have exceeded over $10 million, particularly given |
| 10:21:29 | 9 | other jury verdicts in comparable wrongful death cases both in |
| 10:21:34 | 10 | the City and in South Florida generally. |
| 10:21:38 | 11 | In this case Mr. Breaux's heroic efforts to save |
| 10:21:42 | 12 | Mrs. Poleyeff were compelling and extraordinary and, in my |
| 10:21:46 | 13 | view, would have been generously rewarded by a jury. |
| 10:21:50 | 14 | In terms of noneconomic damages, Mrs. Breaux testified |
| 10:21:54 | 15 | as to the devastating effect upon herself and on her three |
| 10:21:59 | 16 | daughters regarding the untimely loss of the companionship, |
| 10:22:03 | 17 | love and guidance of Mr. Breaux as both a husband and a father. |
| 10:22:07 | 18 | Of significance Mrs. Breaux, who never married, also |
| 10:22:10 | 19 | testified about the traumatic effect of witnessing the tragic |
| 10:22:15 | 20 | event firsthand.  Mrs. Breaux and her three children watched as |
| 10:22:19 | 21 | Mr. Breaux attempted the rescue but was overcome by the rip |
| 10:22:23 | 22 | tides and was pulled unconscious to the beach. |
| 10:22:26 | 23 | The three daughters watched their mother perform CPR |
| 10:22:30 | 24 | on their dying father only later to learn in the hospital that |
| 10:22:33 | 25 | he had died by drowning. |

| | | |
|---|---|---|
| 10:22:36 | 1 | Mrs. Breaux and her daughters were emotionally |
| 10:22:40 | 2 | traumatized as a result.  The record is replete with evidence |
| 10:22:43 | 3 | that the City objectively reviewed and from which it could |
| 10:22:47 | 4 | reasonably conclude that a jury would likely award considerably |
| 10:22:51 | 5 | more than $5 million for these noneconomic damages alone to the |
| 10:22:57 | 6 | four survivors. |
| 10:22:58 | 7 | Mrs. Breaux was 36 years old at the time of her |
| 10:23:00 | 8 | husband's death.  Her three daughters were 14, 12 and 7.  All |
| 10:23:05 | 9 | four of the survivors had joint life expectancies of 36.9 years |
| 10:23:13 | 10 | each with Zachary Breaux.  All of them were in excellent |
| 10:23:16 | 11 | health. |
| 10:23:16 | 12 | All these factors are pertinent under the Florida |
| 10:23:20 | 13 | Wrongful Death Act.  The act provides that a surviving spouse |
| 10:23:25 | 14 | may recover for the loss of the decedent's companionship and |
| 10:23:27 | 15 | protection and for mental pain and suffering from the date of |
| 10:23:30 | 16 | injury.  I cite to Florida Statute 768.21, subpart 2. |
| 10:23:36 | 17 | That statute further provides that minor children of |
| 10:23:39 | 18 | the decedent may recover for lost parental companionship, |
| 10:23:45 | 19 | instruction and guidance and for mental pain and suffering from |
| 10:23:47 | 20 | the date of the injury. |
| 10:23:49 | 21 | The cases cited by the estates under Florida law at |
| 10:23:52 | 22 | Docket Entry 286, Pages 13 through 16, make it clear, and I |
| 10:23:58 | 23 | adopt them, that an award of $5 million or more in noneconomic |
| 10:24:02 | 24 | damages to the Breaux estate would not alone be so extravagant |
| 10:24:08 | 25 | as to shock the conscience of the Court or be manifestly |

Oral Memorandum Decision

| | | |
|---|---|---|
| 10:24:12 | 1 | unsupported by the evidence. |
| 10:24:14 | 2 | Rather, to the contrary, even more significant awards |
| 10:24:18 | 3 | have been held reasonable by the Florida Appellate Courts where |
| 10:24:22 | 4 | the victim had died in front of survivors, particularly in a |
| 10:24:27 | 5 | heroic manner.  Here the $5 million comes to roughly $33,000 a |
| 10:24:31 | 6 | year per survivor over the 36.9 years of the loss.  A jury |
| 10:24:37 | 7 | would have likely found this amount low given the |
| 10:24:41 | 8 | circumstances. |
| 10:24:44 | 9 | Nonetheless, what Monticello appears to argue is that |
| 10:24:46 | 10 | while the $5 million in noneconomic damages is not itself |
| 10:24:51 | 11 | unreasonable, again leaving aside the cap issue for a moment, |
| 10:24:57 | 12 | the City should have started its negotiation at that amount and |
| 10:25:01 | 13 | settled for less.  In essence, Monticello completely discredits |
| 10:25:06 | 14 | the Breaux claim for economic damages and contends that any |
| 10:25:10 | 15 | recognition of economic damages would be speculative and |
| 10:25:14 | 16 | unreasonable. |
| 10:25:14 | 17 | I conclude that Monticello's position in this regard |
| 10:25:19 | 18 | is completely devoid of legal and factual merit.  Here at the |
| 10:25:23 | 19 | time of his death, Zachary Breaux was only 36 years of age and |
| 10:25:27 | 20 | had a life expectancy of an additional 36.9 years. |
| 10:25:31 | 21 | Based on the testimony of Mr. Rickey Schultz who I |
| 10:25:34 | 22 | find well-qualified to testify as an expert and who had direct |
| 10:25:39 | 23 | personal knowledge of Mr. Zachary Breaux's talent and |
| 10:25:43 | 24 | character, as well as the demonstrated success of his already |
| 10:25:46 | 25 | released CDs, the contract to produce additional CDs, the |

| | | |
|---|---|---|
| 10:25:50 | 1 | break-through success of the third CD known as "Uptown Groove" |
| 10:25:55 | 2 | which reached Number 1 on the contemporary jazz radio charts, |
| 10:26:00 | 3 | the opportunities for touring and other activities available to |
| 10:26:03 | 4 | an artist of his caliber and his experience performing with |
| 10:26:06 | 5 | other jazz artists and hip hop artists, that Mr. Breaux could |
| 10:26:11 | 6 | reasonably be expected to have earned approximately $1 million |
| 10:26:13 | 7 | net over six years for royalties, $405,000 per year net for |
| 10:26:19 | 8 | touring, $571,250 over six years for song writing on his own |
| 10:26:26 | 9 | records, $10,000 to $15,000 per year for licensing, and $15,000 |
| 10:26:32 | 10 | to $20,000 per year for producing. |
| 10:26:36 | 11 | In addition, he would have likely earned 25 percent of |
| 10:26:39 | 12 | the advances from Zebra Records under his contract which would |
| 10:26:43 | 13 | be approximately $175,000 over six years.  But even if his |
| 10:26:49 | 14 | career as a recording artist did not continue, Mr. Breaux could |
| 10:26:53 | 15 | have likely earned $100,000 to $200,000 per year as a star |
| 10:26:59 | 16 | sideman or between $45,000 and $250,000 per year as a studio |
| 10:27:07 | 17 | musician in New York. |
| 10:27:08 | 18 | During the settlement process, the City considered |
| 10:27:10 | 19 | this information as well as the report of the Breauxs' expert |
| 10:27:16 | 20 | economist, Mr. David Williams, placing the present money value |
| 10:27:19 | 21 | of the economic loss between $2,561,834 and $6,269,450. |
| 10:27:30 | 22 | All of these estimates represent present money value |
| 10:27:35 | 23 | at the time Breaux was negotiating with the City of Miami |
| 10:27:37 | 24 | Beach. |
| 10:27:39 | 25 | While Monticello's expert, Mr. Peter Shukat, reaches |

| 10:27:45 | 1 | another opinion; namely, that Mr. Breaux would not be |
| 10:27:48 | 2 | successful in economic terms, I conclude that his opinion is |
| 10:27:51 | 3 | less convincing and I decline to accept it, although he, like |
| 10:27:56 | 4 | Mr. Rickey Schultz, was well-qualified to testify under Federal |
| 10:28:00 | 5 | Rule of Evidence 702 standards. |
| 10:28:03 | 6 | I place more weight, however, on Mr. Schultz's factual |
| 10:28:06 | 7 | testimony and his expert opinions, as I believe a jury would |
| 10:28:10 | 8 | have in the event there was a wrongful death trial. |
| 10:28:13 | 9 | The core of the testimony was that Zachary Breaux had |
| 10:28:17 | 10 | achieved this break through and that his probable future |
| 10:28:22 | 11 | earnings would bear little relation to what he had earned in |
| 10:28:25 | 12 | the past. |
| 10:28:25 | 13 | Mr. Schultz had actual knowledge of the talents of |
| 10:28:28 | 14 | Mr. Zachary Breaux, having signed him to a six-album contract |
| 10:28:32 | 15 | with his own record company, and having served as the executive |
| 10:28:37 | 16 | producer for the "Uptown Groove" album. |
| 10:28:40 | 17 | Mr. Schultz had a career of over 30 years in |
| 10:28:44 | 18 | evaluating the probabilities of commercial success of emerging |
| 10:28:51 | 19 | jazz musicians such as Mr. Breaux.  I note that Monticello |
| 10:28:55 | 20 | presented no other evidence or testimony concerning the |
| 10:28:58 | 21 | earnings or potential earnings of Mr. Breaux. |
| 10:29:02 | 22 | I conclude it was reasonable for the City to, in turn, |
| 10:29:07 | 23 | conclude that a jury would have likely rendered an award to the |
| 10:29:11 | 24 | Breaux estate in excess of $10 million, taking into account |
| 10:29:15 | 25 | both noneconomic and economic damages.  This was Mr. Olin's |

| | |
|---|---|
| 10:29:20 | 1 |
| 10:29:25 | 2 |
| 10:29:28 | 3 |

1   expert opinion as well.  Ms. Weinstein estimated the award

2   between $10 million and $15 million, and Mr. Smith anticipated

3   a possible $10 million verdict.

4          My own assessment, based upon the totality of the

5   evidence, is between $10 million and $15 million.  While it is

6   true that there are no reported Florida decisions concerning

7   economic damages for the death of an emerging artist like

8   Mr. Breaux, I am satisfied that the Florida Supreme Court,

9   given all of the circumstances, would have found an award in

10  that range to be reasonable and not speculative.

11         I consider the out-of-state authorities as cited by

12  the estates to be persuasive and indicative of what the result

13  would be under Florida law under the circumstances.

14         I refer to the memo of law of Breaux and Poleyeff

15  regarding damages at Docket Entry 286.

16         I next turn to the Poleyeff estate claim, again

17  leaving aside the claims bill issue, was the City's settlement

18  of the Poleyeff estate for $750,000 objectively reasonable in

19  terms of the economic amount.  Monticello does not strenuously

20  contest the reasonability of the $750,000 settlement amount for

21  the Poleyeff estate.

22         Nonetheless, I independently conclude it was a

23  reasonable and prudent amount based on the expert testimony of

24  Mr. Michael Haggard, as supported by the further testimony of

25  Rabbi Israel Poleyeff; Ms. Susan Wolf, his daughter; Mr. Arthur

Oral Memorandum Decision

| | | |
|---|---|---|
| 10:31:01 | 1 | Poleyeff, his son; as well as by Mr. Smith and Ms. Weinstein |
| 10:31:08 | 2 | regarding their assessment of damages. |
| 10:31:12 | 3 | Here Eugenie Poleyeff died immediately in front of her |
| 10:31:16 | 4 | husband of 44 years.  Rabbi Poleyeff testified that he watched |
| 10:31:20 | 5 | in shock as his wife was pulled from the ocean and CPR was |
| 10:31:24 | 6 | performed on her lifeless body.  He described in detail the |
| 10:31:28 | 7 | emotional distress suffered immediately, as well as thereafter, |
| 10:31:32 | 8 | for the loss of his life partner. |
| 10:31:34 | 9 | His testimony was supported by that of his son and |
| 10:31:37 | 10 | daughter.  I find credible that Rabbi Poleyeff's emotional |
| 10:31:43 | 11 | distress continues to this day, notwithstanding his subsequent |
| 10:31:48 | 12 | marriage which he described as one of companionship rather than |
| 10:31:52 | 13 | a lifetime partnership. |
| 10:31:54 | 14 | Neither Rabbi Poleyeff nor Eugenie were physically ill |
| 10:32:01 | 15 | in any way and neither had shortened life expectancies to any |
| 10:32:04 | 16 | degree.  Eugenie Poleyeff was 66 years old and had an |
| 10:32:08 | 17 | additional 19.2 years of life remaining.  Rabbi Poleyeff, at |
| 10:32:12 | 18 | the time of his wife's death, was 68 years of age and had an |
| 10:32:17 | 19 | additional 15.1 years of life remaining. |
| 10:32:20 | 20 | I consider the joint life expectancies of both in |
| 10:32:24 | 21 | assessing the reasonability of the damage settlement amount. |
| 10:32:27 | 22 | Further, I give weight to Rabbi Poleyeff's testimony that his |
| 10:32:31 | 23 | wife had been working for the last ten years for the New York |
| 10:32:35 | 24 | County School Board as a secretary and had planned to continue |
| 10:32:38 | 25 | working in the foreseeable future. |

| | | |
|---|---|---|
| 10:32:41 | 1 | Eugenie Poleyeff had an established earning record of |
| 10:32:45 | 2 | at least $25,000 per year.  Based on the present economic value |
| 10:32:50 | 3 | report of Mr. David Williams, the expert economist, the total |
| 10:32:54 | 4 | economic loss reduced to present value is $487,000.  This was |
| 10:33:00 | 5 | uncontested by Monticello. |
| 10:33:03 | 6 | Based on this evidence Mr. Haggard opined that a |
| 10:33:06 | 7 | verdict in favor of the Poleyeff estate would likely have been |
| 10:33:10 | 8 | in the range of $3 million to $5 million.  This is my own |
| 10:33:15 | 9 | assessment as well. |
| 10:33:17 | 10 | Monticello presented no expert testimony that the |
| 10:33:19 | 11 | settlement amounts were unreasonable to rebut either Mr. Olin |
| 10:33:22 | 12 | or Mr. Haggard's testimony.  Instead, Monticello at closing |
| 10:33:27 | 13 | argument left the issue to the Court's discretion.  As such, I |
| 10:33:31 | 14 | summarize by concluding that each settlement amount was |
| 10:33:34 | 15 | entirely reasonable and supported by the evidence. |
| 10:33:38 | 16 | I next consider whether there were other subjective |
| 10:33:41 | 17 | factors which supported the City's assessment to settle in the |
| 10:33:46 | 18 | amounts of $5 million and $750,000 to the estates.  I conclude |
| 10:33:52 | 19 | that there were.  I place considerable reliance on the |
| 10:33:55 | 20 | testimony of José Smith, the City Attorney, who, as I |
| 10:33:59 | 21 | mentioned, is himself a certified trial lawyer specializing in |
| 10:34:04 | 22 | personal injury. |
| 10:34:04 | 23 | As City Attorney he was concerned about the |
| 10:34:07 | 24 | precedential effect of a verdict of the magnitude expected on |
| 10:34:12 | 25 | other cases against the City, the negative effect on tourism |

Oral Memorandum Decision

| 10:34:16 | 1 | due to publicity surrounding a significant verdict and, of |
| 10:34:20 | 2 | great importance, the effect of such a verdict on municipal |
| 10:34:24 | 3 | bond credit ratings and any necessary risk management reserve |
| 10:34:28 | 4 | to offset a significant judgment. |
| 10:34:30 | 5 | The City averted this risk by resorting to Coblentz |
| 10:34:34 | 6 | agreements which, in turn, through negotiation, avoided the |
| 10:34:38 | 7 | entry of a final judgment that would have created bond-related |
| 10:34:41 | 8 | issues. |
| 10:34:42 | 9 | In addition, the City had already spent $327,000 |
| 10:34:47 | 10 | defending the case.  It did not have the resources in house to |
| 10:34:51 | 11 | continue to try it on remand.  The City estimated that it would |
| 10:34:56 | 12 | cost an additional $500,000 to continue defending through |
| 10:35:00 | 13 | verdict and appeal.  Had the City not settled, it would have |
| 10:35:04 | 14 | had to use outside counsel for its defense. |
| 10:35:07 | 15 | As a further intangible factor, the City considered |
| 10:35:13 | 16 | both estate counsel to be excellent personal injury attorneys |
| 10:35:16 | 17 | who personally and through their law firms had outstanding |
| 10:35:20 | 18 | reputations in the community for success at trial.  The City |
| 10:35:24 | 19 | also was concerned by the size of the plaintiffs' verdicts in |
| 10:35:27 | 20 | the community. |
| 10:35:28 | 21 | Ms. Weinstein testified that during settlement |
| 10:35:30 | 22 | negotiations, she considered the report from the *Sun Sentinel* |
| 10:35:36 | 23 | newspaper on March 30, 2006, concerning a Broward County jury |
| 10:35:40 | 24 | verdict of $25 million arising out of the death of a husband |
| 10:35:44 | 25 | and father in an airplane crash. |

Oral Memorandum Decision

26

| | | |
|---|---|---|
| 10:35:47 | 1 | The jury awarded $10 million to the 45-year-old widow, |
| 10:35:52 | 2 | $3.5 million to each of the four children ages 6, 11, 17, and |
| 10:35:56 | 3 | 19, and $1.2 million in economic damages. |
| 10:36:00 | 4 | She also considered the case reported at 2003 WL |
| 10:36:07 | 5 | 22455998 known as the Burgess Transporting case regarding the |
| 10:36:14 | 6 | death of a 37-year-old husband and father who was crushed to |
| 10:36:19 | 7 | death by a tractor trailer in October 2001. |
| 10:36:25 | 8 | The Dade County jury rendered a verdict of $1.5 |
| 10:36:28 | 9 | million for each of the two children ages 19 and 16.  No claim |
| 10:36:31 | 10 | was made in that case for the widow who had been separated from |
| 10:36:35 | 11 | her husband prior to his death. |
| 10:36:37 | 12 | Ms. Weinstein also considered the report from the July |
| 10:36:41 | 13 | 31, 2006 *Florida Daily Business Review* concerning the case of |
| 10:36:46 | 14 | Chomat v. Northern Insurance Company, an $8.5 million Coblentz |
| 10:36:53 | 15 | settlement arising out of the loss of seven fingers by a |
| 10:36:57 | 16 | 33-year-old machine operator whose hand was caught feeding a |
| 10:37:03 | 17 | particular machine operation. |
| 10:37:05 | 18 | The $8.5 million was paid after a judicial finding of |
| 10:37:09 | 19 | coverage by the Dade County Circuit Court, which decision was |
| 10:37:13 | 20 | upheld by the Florida Third District Court of Appeal and where |
| 10:37:17 | 21 | the issues of reasonableness and good faith were litigated. |
| 10:37:20 | 22 | So in my view, all of these subjective circumstances |
| 10:37:25 | 23 | were properly considered by the City in determining reasonably |
| 10:37:27 | 24 | to settle this case for the amount at issue. |
| 10:37:32 | 25 | I now turn to the next issue:  Was the settlement by |

| | | |
|---|---|---|
| 10:37:37 | 1 | the City unreasonable under the circumstances because of the |
| 10:37:39 | 2 | $200,000 damage cap and the fact that any further award would |
| 10:37:43 | 3 | have had to be approved by the Florida Legislature through the |
| 10:37:51 | 4 | special claims bill process. |
| 10:37:55 | 5 | Monticello's best argument concerning reasonableness |
| 10:37:59 | 6 | is that the settlement amounts should have been kept at the |
| 10:38:02 | 7 | statutory cap or significantly discounted during negotiations |
| 10:38:07 | 8 | because of the lack of certainty that a special claims bill |
| 10:38:11 | 9 | would have been passed by the Florida State Legislature, even |
| 10:38:15 | 10 | assuming a larger verdict had been entered against the City. |
| 10:38:20 | 11 | This was the substantive issue argued by the parties in the |
| 10:38:24 | 12 | Phase 2 proceedings. |
| 10:38:26 | 13 | Monticello relies on the testimony of its expert, |
| 10:38:29 | 14 | Mr. Robert Trammell, that a contested claims bill would not |
| 10:38:34 | 15 | have passed the Legislature.  In turn, the estates rely on the |
| 10:38:39 | 16 | expert testimony of Mr. Donald Lamonica that a claims bill |
| 10:38:47 | 17 | would have ultimately passed the Legislature and could have |
| 10:38:50 | 18 | been introduced on a year-to-year basis.  This is because a |
| 10:38:55 | 19 | claims bill may be refiled during any legislative session even |
| 10:39:00 | 20 | if it was previously considered. |
| 10:39:03 | 21 | Both parties have filed numerous motions attacking |
| 10:39:08 | 22 | each other's experts for various reasons.  I find that none of |
| 10:39:11 | 23 | these motions has merit.  Each witness was sufficiently |
| 10:39:15 | 24 | qualified to offer expert opinions in this rather esoteric |
| 10:39:20 | 25 | area.  In fact, these two gentlemen were probably best |

| 10:39:23 | 1 | qualified in the State of Florida to do so. |
|---|---|---|
| 10:39:25 | 2 | Fortunately for me, I do not have to decide whether |
| 10:39:28 | 3 | the Florida Legislature would have passed a claims bill with |
| 10:39:33 | 4 | certainty. Both experts agree that such an assessment involves |
| 10:39:39 | 5 | issues of politics, timing, relationships and other intangibles |
| 10:39:45 | 6 | that are difficult to assess on a year-to-year basis. |
| 10:39:48 | 7 | However, the issue here is more narrow: it is whether |
| 10:39:51 | 8 | the City's concerns about such a bill passing following a |
| 10:39:55 | 9 | possible record-setting verdict should be disregarded as |
| 10:39:59 | 10 | objectively unreasonable. |
| 10:40:00 | 11 | I conclude that Monticello failed to carry its burden |
| 10:40:04 | 12 | to show objective unreasonability under the circumstances. |
| 10:40:12 | 13 | This was not the first time the City dealt with the claims bill |
| 10:40:16 | 14 | process. The City had two other claims bills passed prior to |
| 10:40:21 | 15 | this incident. Neither case involved any insurance coverage |
| 10:40:26 | 16 | issues and were settled in order to avoid very large damages |
| 10:40:30 | 17 | against the City. |
| 10:40:30 | 18 | Like these other cases, both Mr. Smith and |
| 10:40:36 | 19 | Ms. Weinstein regarded the Poleyeff/Breaux cases as one of |
| 10:40:41 | 20 | absolute liability. In fact, both Smith and Weinstein |
| 10:40:44 | 21 | reasonably believed that the Breaux/Poleyeff case was stronger |
| 10:40:48 | 22 | than the other claims bill the City had jointly supported |
| 10:40:51 | 23 | before the Legislature. |
| 10:40:53 | 24 | Monticello's expert did not consider this point and |
| 10:40:56 | 25 | assumed in his analysis that the claims bill would have been |

| | | |
|---|---|---|
| 10:41:00 | 1 | contested by the City.  However, both Weinstein and Smith |
| 10:41:04 | 2 | testified that had a large verdict been rendered by the City, |
| 10:41:08 | 3 | the City, based on its prior experiences, would have |
| 10:41:10 | 4 | compromised the verdicts to the subject settlement amounts and |
| 10:41:15 | 5 | jointly supported a claims bill through the Legislature. |
| 10:41:18 | 6 | They would have done so for all the reasons I've |
| 10:41:21 | 7 | discussed with regard to the criteria mentioned.  Even |
| 10:41:27 | 8 | Monticello's experts agree that under those circumstances the |
| 10:41:31 | 9 | claims bill would have likely passed. |
| 10:41:34 | 10 | For the reasons that I've indicated, a large verdict |
| 10:41:36 | 11 | was likely.  I give considerable weight to the testimony of |
| 10:41:40 | 12 | both Smith and Weinstein that the City would have sought to |
| 10:41:44 | 13 | compromise large verdicts and sponsor a compromise claims bill |
| 10:41:49 | 14 | in order to avoid setting up contingent liabilities that would |
| 10:41:52 | 15 | have affected its ongoing bonding efforts for City projects. |
| 10:41:57 | 16 | Even without a compromise bill, the testimony of |
| 10:41:59 | 17 | Donald Lamonica, a Tallahassee lobbyist who specialized in |
| 10:42:05 | 18 | claims bills for over 25 years, supported that the City had a |
| 10:42:08 | 19 | reasonable fear that over time the Breaux and Poleyeff bills |
| 10:42:10 | 20 | would have passed in a substantial amount, especially in light |
| 10:42:14 | 21 | of the excellent personal qualities of both decedents; the fact |
| 10:42:20 | 22 | that they were tourists; the strength of the Florida Supreme |
| 10:42:22 | 23 | Court decision on the issue of duty and its road map for |
| 10:42:26 | 24 | liability; the heroism of Mr. Zachary Breaux; the egregious |
| 10:42:32 | 25 | facts of both Rabbi Poleyeff and Mrs. Breaux and the three |

| 10:42:36 | 1 | young children witnessing the drownings; and Mr. Breaux's |
| 10:42:39 | 2 | status as a celebrity jazz composer and musician at the time; |
| 10:42:45 | 3 | and the fact that there might also be insurance coverage |
| 10:42:47 | 4 | depending on the Court's ruling on additional insured coverage. |
| 10:42:50 | 5 | In fact, the 2007 and 2008 sessions produced four |
| 10:42:59 | 6 | contested claims bills which had passed through the |
| 10:43:02 | 7 | Legislature.  Given the entirety of the circumstances, |
| 10:43:06 | 8 | including that this would be a local claims bill and the |
| 10:43:10 | 9 | Legislature would not be spending its own money and that |
| 10:43:12 | 10 | typically a majority of claims bills that have been filed have |
| 10:43:18 | 11 | passed over time, I conclude it was reasonable for the City to |
| 10:43:22 | 12 | fear that the claims bill by the estates could have likely been |
| 10:43:28 | 13 | passed by the Legislature in these cases if the City had not |
| 10:43:30 | 14 | entered into the Coblentz settlements with Breaux and Poleyeff. |
| 10:43:37 | 15 | I now address whether the settlement agreements were |
| 10:43:40 | 16 | negotiated in good faith.  In determining whether a Coblentz |
| 10:43:44 | 17 | agreement is tainted by bad faith and thus unenforceable, the |
| 10:43:52 | 18 | ordinary standard of collusion or fraud has been held to be |
| 10:43:54 | 19 | inappropriate.  The parties have referred to Steil v. Florida |
| 10:43:59 | 20 | Physicians Inc. Reciprocal, 448 So.2d 589-592, a decision by |
| 10:44:11 | 21 | the Florida Second District Court of Appeal in 1984. |
| 10:44:15 | 22 | The Florida Second District Court of Appeal's |
| 10:44:21 | 23 | discussion highlights what is at issue here, and I take the |
| 10:44:25 | 24 | liberty of quoting from that opinion because it will put into |
| 10:44:29 | 25 | context my remaining rulings.  In that opinion it says: |

| 10:44:33 | 1 | "However in the instant case, or one involving consent |
| 10:44:38 | 2 | judgment with a covenant not to execute, the settlement |
| 10:44:43 | 3 | figure is more suspect.  The conduct of an insured can |
| 10:44:45 | 4 | hardly be characterized as fraudulent simply because he |
| 10:44:49 | 5 | stipulates to a large settlement figure in order to obtain |
| 10:44:53 | 6 | his release from liability. |
| 10:44:55 | 7 | "He has little or nothing to lose because he will |
| 10:44:59 | 8 | never be obligated to pay.  As a consequence, the |
| 10:45:01 | 9 | settlement of liability and damages may have very little |
| 10:45:05 | 10 | relationship to the strength of the plaintiff's claim.  Due |
| 10:45:08 | 11 | to this problem, the ordinary standard of collusion or |
| 10:45:11 | 12 | fraud is inappropriate. |
| 10:45:14 | 13 | "Thus, we hold that in a case such as this, a |
| 10:45:16 | 14 | settlement may not be enforced against the carrier if it is |
| 10:45:22 | 15 | unreasonable in amount or tainted by bad faith.  However, |
| 10:45:26 | 16 | because the circumstances surrounding the settlement will |
| 10:45:29 | 17 | be better known to the party seeking to enforce it, he |
| 10:45:33 | 18 | should assume the burden of initially going forward with |
| 10:45:35 | 19 | the production of evidence sufficient to make a prima facie |
| 10:45:38 | 20 | showing of reasonableness and lack of bad faith, even |
| 10:45:41 | 21 | though the ultimate burden of proof will rest on the |
| 10:45:44 | 22 | carrier." |
| 10:45:46 | 23 | The Court goes on to say: |
| 10:45:48 | 24 | "As stated by the New Jersey Supreme Court in Griggs |
| 10:45:52 | 25 | v. Bertram when it adopted a similar guideline," and this |

| | | |
|---|---|---|
| 10:45:57 | 1 | is a quote within the quote, "'This rule reasonably |
| 10:46:05 | 2 | accommodates and compromises the competing interests of the |
| 10:46:08 | 3 | parties and considerations of public policy.  It will |
| 10:46:13 | 4 | discourage collusive overreaching impositions upon |
| 10:46:16 | 5 | insurance carriers and at the same time will be conducive |
| 10:46:20 | 6 | towards encouraging settlement and protecting an insured in |
| 10:46:24 | 7 | its efforts amicably to resolve a claim against it after |
| 10:46:27 | 8 | having been abandoned by its carrier.'" |
| 10:46:32 | 9 | Turning back to this case, Monticello does not contest |
| 10:46:36 | 10 | that the City had a legal right to enter into Coblentz |
| 10:46:40 | 11 | agreements.  Rather, Monticello makes the point that the |
| 10:46:44 | 12 | inherent risk in Coblentz agreements between municipalities and |
| 10:46:48 | 13 | claimants is that the City can agree to any amount to get a |
| 10:46:51 | 14 | settlement, thereby leaving the insurance company to pick up |
| 10:46:54 | 15 | the stipulated amount over the statutory cap in the event |
| 10:46:58 | 16 | coverage is determined. |
| 10:47:00 | 17 | Monticello suggests that the real test should be what |
| 10:47:04 | 18 | the City would have negotiated if dealing in the real world |
| 10:47:08 | 19 | with its own money. |
| 10:47:09 | 20 | I concur that this Court must carefully monitor |
| 10:47:13 | 21 | collusive overreaching impositions upon insurance carriers |
| 10:47:18 | 22 | which can be inherent in a Coblentz-type settlement with a |
| 10:47:22 | 23 | municipality.  Therefore, I have carefully reviewed this record |
| 10:47:24 | 24 | and considered the parties' arguments to ascertain if there was |
| 10:47:28 | 25 | any overreaching or collusion of any sort. |

| | | |
|---|---|---|
| 10:47:32 | 1 | Without equivocation I conclude that the estates have |
| 10:47:35 | 2 | met their prima facie burden to establish that the settlements |
| 10:47:38 | 3 | were in good faith and that Monticello has failed to show any |
| 10:47:42 | 4 | true indicia of bad faith. |
| 10:47:44 | 5 | Given the totality of the circumstances, I would not |
| 10:47:47 | 6 | reach a different result if I applied the test advocated by |
| 10:47:53 | 7 | Monticello; namely, to view the settlements as if the City were |
| 10:47:56 | 8 | negotiating with its own money. |
| 10:47:58 | 9 | Monticello in closing argument does not really contest |
| 10:48:01 | 10 | that the total amount of $5.75 million falls within the realm |
| 10:48:07 | 11 | of reason just on the intangible factors.  Here the City |
| 10:48:12 | 12 | vigorously negotiated the amount of settlement over a period of |
| 10:48:15 | 13 | one-and-a-half years from the initial offer of $10.5 million |
| 10:48:19 | 14 | for Breaux and $2 million for Poleyeff to the amounts |
| 10:48:22 | 15 | ultimately reached in this case. |
| 10:48:23 | 16 | I find the settlement amounts were reached through |
| 10:48:28 | 17 | reasonable arm's length negotiation without any fraud or |
| 10:48:31 | 18 | collusion of any form. |
| 10:48:33 | 19 | As a public entity there is an inherent check and |
| 10:48:36 | 20 | balance as to the amount negotiated.  As is apparent from this |
| 10:48:40 | 21 | case, whatever was done in this case becomes the standard that |
| 10:48:44 | 22 | would have to be followed in the next ocean drowning case. |
| 10:48:49 | 23 | The City acted prudently and not simply for the |
| 10:48:53 | 24 | collusive purpose of punishing the carrier because of its |
| 10:48:57 | 25 | refusal to defend, provide coverage, and settle for the policy |

| | | |
|---|---|---|
| 10:49:01 | 1 | limit. |
| 10:49:01 | 2 | Monticello claims that the City was not objectively |
| 10:49:05 | 3 | afraid of the claims bill and that its real fear was the loss |
| 10:49:08 | 4 | of opportunity to reach Coblentz settlements if this Court |
| 10:49:12 | 5 | ruled against the City on the coverage issue in this |
| 10:49:14 | 6 | litigation. |
| 10:49:15 | 7 | While Monticello seems to argue that the City's |
| 10:49:19 | 8 | consideration of this factor suggests bad faith, I conclude |
| 10:49:23 | 9 | otherwise.  Again, it was Monticello that put the City in this |
| 10:49:27 | 10 | position and the City was prudent in limiting its risk given |
| 10:49:31 | 11 | Monticello's denial of coverage and its lack of defense. |
| 10:49:35 | 12 | In any event I find credible the testimony of Smith |
| 10:49:37 | 13 | and Weinstein that the concern over passage of the claims bill |
| 10:49:42 | 14 | was a real and strong motivating factor in supporting the |
| 10:49:45 | 15 | settlement amounts.  I find this concern, for the reasons I've |
| 10:49:49 | 16 | indicated, objectively reasonable. |
| 10:49:53 | 17 | Lastly, I consider this issue, whether Monticello |
| 10:49:59 | 18 | should be allowed to unilaterally amend the pretrial |
| 10:50:02 | 19 | stipulation to add the defense the damages in this case may not |
| 10:50:06 | 20 | exceed the $1 million policy limit. |
| 10:50:08 | 21 | I must express my own frustration that Monticello |
| 10:50:12 | 22 | raised this issue for the first time at the eleventh hour |
| 10:50:15 | 23 | before commencement of the Phase 2 trial. |
| 10:50:19 | 24 | After all, this case has been pending since March |
| 10:50:22 | 25 | 2006.  Here Monticello sought to file an amended unilateral |

| 10:50:28 | 1 | pretrial stipulation to raise for the first time the issue of |
| 10:50:31 | 2 | whether the purported Coblentz agreements can be enforced |
| 10:50:34 | 3 | against Monticello for an amount in excess of $1 million. |
| 10:50:39 | 4 | I conclude that Monticello has waived any defense of |
| 10:50:42 | 5 | limiting the recovery to policy limits by failing timely to |
| 10:50:46 | 6 | plead such an affirmative defense other than at the eleventh |
| 10:50:49 | 7 | hour.  I conclude, for the reasons that are well stated in the |
| 10:50:54 | 8 | estates' responses at Docket Entry 285 which I adopt and |
| 10:50:57 | 9 | incorporate by reference, that permitting such a defense at the |
| 10:51:00 | 10 | eleventh hour would have been unduly prejudicial against them. |
| 10:51:04 | 11 | Furthermore, even if I permitted the defense to be |
| 10:51:08 | 12 | pled, I would ultimately conclude that it is inconsistent with |
| 10:51:11 | 13 | substantive Florida law and public policy considerations. |
| 10:51:14 | 14 | I wish to make clear that I've never invited |
| 10:51:19 | 15 | Monticello to amend its pleadings.  At the pretrial conference |
| 10:51:22 | 16 | I merely inquired if any case law existed on whether the amount |
| 10:51:26 | 17 | awarded in this case could be less than the settlement amount |
| 10:51:29 | 18 | in the event I found the total amount sought to be unreasonable |
| 10:51:33 | 19 | in light of the special claims bill process. |
| 10:51:35 | 20 | I do not now need to reach this issue because I've |
| 10:51:39 | 21 | concluded that each settlement amount is reasonable.  When |
| 10:51:43 | 22 | Monticello chose to hang its hat on the coverage hook, it acted |
| 10:51:47 | 23 | at its peril in refusing to defend the insured and settle for |
| 10:51:51 | 24 | policy limits and can and will now be held responsible for its |
| 10:51:56 | 25 | consequences. |

Oral Memorandum Decision

36

| | |
|---|---|
| 10:51:57 | 1 |

10:51:57  1    In sum, for the reasons stated in this decision and in

10:52:01  2    the decision stated in Phase 1, I conclude because Monticello

10:52:05  3    wrongly refused to defend the state court actions against the

10:52:08  4    City for which there was coverage under the policies issued by

10:52:13  5    Monticello to Hurricane Beach Rentals, the settlement against

10:52:17  6    the City in favor of the Breaux estate in the amount of $5

10:52:20  7    million and in favor of the Poleyeff estate in the amount of

10:52:23  8    $750,000 shall be enforced against Monticello.

10:52:27  9    By way of summary, I conclude that the estates have

10:52:30  10   met their prima facie burden and Monticello has failed to meet

10:52:35  11   its ultimate burden of establishing unreasonability or bad

10:52:39  12   faith under the Coblentz factors.

10:52:41  13   For reasons stated in my order, I shall enter judgment

10:52:45  14   in favor of the estates and against Monticello for $5 million

10:52:49  15   for the Breaux estate and $750,000 for the Poleyeff estate.  I

10:52:53  16   reserve to consider issues relating to prejudgment interest as

10:52:58  17   may be allowable under Florida law, as well as costs and

10:53:01  18   attorney fees.

10:53:03  19   I also deny the following outstanding Motions in

10:53:06  20   Limine and other related motions as being without merit or as

10:53:12  21   now moot because of the rulings I've stated in these orders.

10:53:15  22   These motions are at Docket Entries 233, 252, 253, 254, 270 and

10:53:22  23   276.

10:53:24  24   I now ask the court reporter to transcribe today's

10:53:27  25   proceedings and file these matters of record.  I impose the

December 11, 2009

| | | |
|---|---|---|
| 10:53:32 | 1 | cost of the transcript in this regard on Monticello, which |
| 10:53:36 | 2 | shall be paid within ten days after it is filed of record. |
| 10:53:40 | 3 | All of my facts and conclusions will be incorporated |
| 10:53:45 | 4 | in the final judgment by way of reference to these transcripts. |
| 10:53:48 | 5 | Thank you for your appearances today.  We're |
| 10:53:51 | 6 | adjourned. |
| 10:53:55 | 7 | **MR. BUCKLEY:**  Thank you, Judge. |
| 10:53:56 | 8 | **MR. POMERANTZ:**  Thank you, Your Honor. |
| 10:53:57 | 9 | **MR. YAFFA:**  Judge, thanks again. |
| 10:54:00 | 10 | *[The proceedings conclude at 10:54 a.m., 12/11/09.]* |
| | 11 | **C E R T I F I C A T E** |
| | 12 | I hereby certify that the foregoing is an accurate transcription of the |
| | 13 | proceedings in the above-entitled matter. |
| | 14 | |
| | 15 | __12.12.09__ |
| | | DATE |
| | 16 | JOSEPH A. MILLIKAN, RPR-CM-FCRR |
| | | *Official United States Court Reporter* |
| | 17 | *Federally Certified Realtime Reporter* |
| | | 400 North Miami Avenue, Suite 11-1 |
| | 18 | Miami, FL 33128            305.523.5588 |
| | | (Fax)   305.523.5589 |
| | 19 | jamillikan@aol.com |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

**A**

abandoned 13:9 32:8
about 12:15 13:6 17:19 24:23
    28:8
above 7:15
above-entitled 37:13
Abramowitz 2:16
absolute 28:20
aby@grossmanroth.com 2:14
accept 9:19 21:3
accommodates 32:2
account 21:24
accurate 37:12
achieved 21:10
act 18:13,13
acted 33:23 35:22
action 8:4,18 9:13
actions 9:12 36:3
activities 20:3
actual 21:13
actually 8:11
add 34:19
addition 20:11 25:9
additional 5:4 8:2,25 15:11
    19:20,25 23:17,19 25:12 30:5
address 10:20,22 11:3,7 30:15
addressed 4:23
adjourned 37:6
Administratrix 1:11,14
admitted 6:4
adopt 5:12,22 14:7,14 18:23
    35:8
adopted 15:25 31:25
Advanced 3:8 11:24
advances 20:12
adverse 9:11 13:11
advice 7:25 8:12 10:6,16
advocated 33:6
affected 29:15
affirmative 35:6
afraid 34:3
after 5:3 8:22 26:18 32:7 34:24
    37:2
again 12:11 19:11 22:16 34:9
    37:9
against 8:10 12:7 24:25 27:10
    28:17 31:14 32:7 34:5 35:3,10
    36:3,5,8,14
age 19:19 23:18
ages 26:2,9
agree 6:22 7:12,16 9:18 11:11
    12:13 15:10 28:4 29:8 32:13
agreed 16:23
agreement 6:23 7:15 9:22 30:17
agreements 4:25 5:21 6:22 8:15
    10:23 11:13,16 13:8 25:6
    30:15 32:11,12 35:2
airplane 25:25
ALAN 1:22
album 21:16
allegations 8:10
alleged 6:19
allowable 36:17
allowed 34:18
allows 13:8
alone 18:5,24
along 13:10
already 19:24 25:9
although 15:25 21:3
amend 34:18 35:15
amended 34:25
amicably 32:7
amount 11:3,23 12:17 13:21
    16:23 19:7,12 22:19,20,23
    23:21 24:14 26:24 29:20
    31:15 32:13,15 33:10,12,20
    35:3,16,17,18,2 1 36:6,7
amounts 11:6 12:5 24:11,18

27:6 29:4 33:14,16 34:15

analysis 28:25
Andrew 2:11 4:6
another 21:1
anticipated 22:2
anywhere 16:2
apparent 33:20
appeal 10:15 25:13 26:20 30:21
Appeals 7:6 10:7
Appeal's 30:22
appear 16:10
appearances 2:1 4:2,13 37:5
appears 19:9
Appellate 19:3
applicable 11:10,11
applied 33:6
apply 7:16
apply 7:19 10:17
applying 11:17 16:13
approved 27:3
approximately 20:6,13
area 15:6,19,24 16:10,11 27:25
areas 16:2
argue 7:10 19:9 34:7
argued 27:11
argument 10:15 24:13 27:5 33:9
arguments 5:16 32:24
arising 25:24 26:15
arm's 33:17
Arthur 6:11 22:25
artist 20:4,14 22:7
artists 20:5,5
ascertain 32:24
aside 11:2 16:20 19:11 22:17
asking 9:13
assess 8:6
assessed 10:1 16:16
assessing 23:21
assessment 13:24 14:4,23 15:10
    17:7 22:4 23:2 24:9,17 28:4
assessments 17:1
assigned 12:6
Assistant 6:13 14:16
assume 31:18
assumed 28:25
assuming 27:10
Atlantic 5:7
attacking 27:11
attempted 17:21
attorney 6:9,14 9:24 14:15,16
    24:20,23 36:18
attorneys 17:3 25:16
authorities 22:11
available 20:3
Avenue 2:21 37:17
averted 25:5
avoid 28:16 29:14
avoided 25:6
award 9:11 18:4,23 21:23 22:1,9
    27:2
awarded 26:1 35:17
awards 12:17 19:2
a.m 37:10

**B**

B 2:2
back 32:9
bad 12:10 30:17 31:15,20 33:4
    34:8 36:11
balance 33:20
base 16:24
based 8:12 16:14 19:21 22:4,23
    24:2,6 29:3
basis 27:18 28:8
beach 1:9,15 2:8,8 4:12 5:1,4,6,6
    5:11 6:9,13 7:13,25 8:24 9:1,2
    9:7,9 11:19 12:4 14:15 15:5
    15:16,17,19 16:3,10 17:4,22

20:24 36:5

beachgoers 16:6
bear 21:11
becomes 33:21
before 12:4 22:5 15:8 14:9 9:22
    12:24 28:23 34:23
behalf 4:4,7,11
being 36:20
belief 10:11
believe 21:7
believed 28:21
Bertram 31:25
best 27:5,25
better 31:17
between 4:25 10:19 12:20 20:16
    20:21 22:2,5 32:12
bifurcated 4:20,23
bill 6:7 11:9 13:18,20 16:21
    22:17 27:4,8,14,16,19 28:3,8
    28:13,22,25 29:5,9,13,16 30:8
    30:12 34:3,13 35:19
bills 6:18 28:14 29:18,19 30:6
    30:10
Blvd 2:3,17
Board 23:24
body 23:6
bona 8:1
bond 25:3
bonding 29:15
bond-related 25:7
both 6:9 7:4 8:19,21 11:5,16,17
    15:20 16:13 17:2,9,17:25
    23:20 25:16 27:21 28:4,18,20
    29:1,12,21,25
break 21:10
break-through 20:1
Breaux 1:10,11,14,1 4 2:16 4:5
    4:14,14,2 5 6:16 8:19,23 9:4
    10:19 11:4 12:23 14:12 16:18
    16:21 17:5,7,14,17,18,20,21
    18:1,7,10,2 4 19:14,19 20:5,14
    20:23 21:1,1 9,14,19,21,24 22:8
    22:14 29:19,24,25 30:14
    33:14 36:6,15
Breauxs 15:15 16:6 20:19
Breaux's 6:19 17:11 19:23 30:1
Breaux/Poleyeff 28:21
brought 9:4
Broward 25:23
BRYAN 2:11
Buckley 2:2,3 4:8,8 37:7
burden 12:7,10 28:11 31:18,21
    33:2 36:10,11
burdens 13:12
Burgess 26:5
Business 26:13

**C**

C 37:11,11
caliber 20:4
called 15:25
cap 7:15 11:2,9 15:1 19:11 27:2
    27:7 32:15
care 15:4
career 20:14 21:17
carefully 32:20,23
carrier 31:14,22 32:8 33:24
carriers 32:5,21
carry 28:11
case 1:3 4:2 5:10 7:19,25 9:20
    10:13,14 11:15,19 12:24
    13:13 15:3 17:11 25:10 26:4,5
    26:10,13,24 28:15,21 31:1,13
    32:9 33:15,21,21,2 4 34:19,24
    35:16,17
cases 7:17 8:21 9:10 12:17,23
    13:1,3 14:1 17:9 18:21 24:25
    28:18,19 30:13

caught 26:16
causal 15:12
causally 11:1 14:4
causation 13:16,25
cause 14:20 16:18
CD 20:1
CDs 19:25,25
celebrity 30:2
Center 2:9,12
Cert 10:13
certainty 11:20 27:8 28:4
Certificate 3:3
certified 2:21 24:21 37:16
certify 37:12
challenging 12:25
chances 11:22
character 19:24
characterized 31:4
Charles 1:11,14
charts 20:2
check 33:19
children 17:20 18:17 26:2,9
    30:1
Chomat 3:6 7:4 12:11 26:14
chose 35:22
Circuit 7:18 26:19
circumstances 8:8 11:8 19:8
    22:9,13 26:22 27:1 28:12 29:8
    30:7 31:16 33:5
CITATIONS 3:5
cite 7:4 11:13,24 12:11 18:16
cited 11:15 13:5 18:21 22:11
City 1:9,15 2:8,8 4:12,25 5:4,11
    6:9,13,25 7:13,25 8:2,10,24
    9:2,7,9,18,21,2 3 10:2,19,24
    11:8,19 12:4,22,23,25 14:11
    14:15,16,17,19,2 5 15:3,8,14
    15:25 16:4,8,8,16 17:3,6,10
    18:3 19:12 20:18,23 21:22
    24:20,23,25 25:5,9,11,13,15
    25:18 26:23 27:1,10 28:13,14
    28:17,22 29:1,2,3,12,15,18
    30:11,13 32:10,13,18 33:7,11
    33:23 34:2,5,9,10 36:4,6
City's 12:6 13:7,24 14:3 15:13
    16:21 22:17 24:17 28:8 34:7
Civil 6:1
claim 12:6 16:22 19:14 22:16
    26:9 31:10 32:7
claimants 32:13
claims 6:7,18 11:9 13:7,18,20
    16:21 22:17 27:4,8,14,16,19
    28:3,13,14,22,2 5 29:5,9,13,18
    30:6,8,10,12 34:2,3,13 35:19
clear 13:5 18:22 35:14
closest 15:21
closing 5:16 24:12 33:9
Coblentz 4:24 6:21,22 7:14 8:14
    9:22 10:18,23 11:13,16 13:8
    13:14 14:2,6 25:5 26:14 30:14
    30:16 32:10,12 34:4 35:2
    36:12
Coblentz-type 32:22
collusion 30:18 31:11 32:25
    33:18
collusive 32:4,21 33:24
comes 19:5
commencement 34:23
commercial 21:18
Commission 14:17
community 25:18,20
companionship 17:16 18:14,18
    23:12
company 1:6,18 3:6,8,8,9 5:6,11
    7:5 10:8 11:24,25 21:15 26:14
    32:14
comparable 17:9
comparative 13:25 14:21

comparatively 16:19
comparison 12:17
compelling 17:12
compensatory 12:17
competing 29:4
complain 13:6
completely 19:13,18
complicated 13:17
composer 30:2
compromise 29:13,13,16
compromised 29:4
compromises 32:2
concern 34:13,15
concerned 24:23 25:19
concerning 12:22 13:24 21:20
  22:6 25:23 26:13 27:5
concerns 28:8
concessionaire 5:7
conclude 8:7,9 14:6 16:15,23
  18:4 19:17 21:2,22,23 22:22
  24:18 28:11 30:11 33:1 34:8
  35:4,7,12 36:2,9 37:10
concluded 4:18 5:3 7:7 14:17
  35:21
concluding 10:25 24:14
conclusion 9:20 16:24
conclusions 4:20 5:13,23 14:24
  17:4 37:3
concur 10:16 13:4 14:7,24
  32:20
condition 16:9
conditions 15:4
conducive 32:5
conduct 13:6 31:3
conducted 12:22
conference 35:15
conjunction 6:2
conscience 18:25
consent 31:1
consequence 31:8
consequences 35:25
consider 10:24 22:11 23:20
  24:16 28:24 34:17 36:16
considerable 24:19 29:11
considerably 18:4
consideration 34:8
considerations 32:3 35:13
considered 20:18 25:15,22 26:4
  26:12,23 27:20 32:24
containing 5:19
contemporary 20:2
contends 7:11,24 19:14
CONTENTS 3:1
contest 22:20 32:9 33:9
contested 27:14 29:1 30:6
context 30:25
contingent 29:14
continue 20:14 23:24 25:11,12
continues 23:11
contract 19:25 20:12 21:14
contrary 19:2
Convention 2:9
convincing 21:3
core 21:9
corporation 1:6,19 11:18 12:4
cost 25:12 37:1
costs 36:17
counsel 8:1,12,19 9:25 10:6,16
  25:14,16
Counterclaimants 1:16
Counterdefendant 1:20
County 14:10 23:24 25:23 26:8
  26:19
coupled 13:11
court 1:1 2:20 4:1,2,10,13,16,17
  4:22 5:15 7:5,20 8:10,14,19
  9:16 10:7,14,14 14:9,18,25
  15:2 18:25 22:8 26:19,20

29:23 30:21,22 31:23,24
  32:20 34:4 36:3,24 37:16
COURTROOM  1:7
Courts 7:18 19:3
Court's 8:17 15:7 24:13 30:4
covenant 31:2
coverage 5:4 6:24 7:8 8:1,5,11
  9:7,17,23 10:3,10,11 13:2
  26:19 28:15 30:3,4 32:16
  33:25 34:5,11 35:22 36:4
CPR 17:23 23:5
crash 25:25
created 19:5 25:7
credible 23:10 34:12
credit 25:3
crippling 13:11
criteria 16:14 29:7
crushed 26:6
current 15:22 16:1
currents 15:15,17 16:2,5
Curtis 2:2 4:9

D
Dade 26:8,19
Daily 26:13
damage 11:5 12:16 16:23 23:21
  27:2
damages 6:20 11:1 14:21 17:14
  18:5,24 19:10,14,15 21:25
  22:7,15 23:2 26:3 28:16 31:9
  34:19
dangerous 15:4,15 16:4,9
date 18:15,20 37:15
dated 5:10
daughter 22:25 23:10
daughters 17:16,23 18:1,8
David 20:20 24:3
day 16:5 23:11
days 16:2 37:2
DCA 12:1
dealing 32:18
dealt 28:13
death 9:4,10,17 13:3 14:1 17:9
  18:8,13 19:19 21:8 22:7 23:18
  25:24 26:6,7,11
deaths 14:11
decedent 18:18
decedents 29:21
decedent's 18:14
DECEMBER 1:9
decide 28:2
decided 7:20
decision 12:2 4:19 7:6 8:12
  11:25 12:11 14:25 15:13
  26:19 29:23 30:20 36:1,2
decisions 22:6
declaration 9:14,21
declaratory 8:4,13 9:13
decline 21:3
declined 13:4
defend 6:25 7:23,24 8:9,17
  12:19 13:3 15:9 33:25 35:23
  36:3
defendants 1:12 2:7 12:19
defendant's 12:16
defending 13:1 25:10,12
defense 9:3,7,12,23,25 10:1,6
  12:22 13:6 14:22 15:1 25:14
  34:11,19 35:4,6,9,11
degree 11:20 23:16
Delaware 1:6,18
demand 8:24 9:3
demanding 8:20
demonstrated 19:24
denial 34:11
denied 9:6,7,23 10:4,13
denies 10:10
deny 36:19

depending 30:4
depositions 6:3
described 23:6,12
detail 23:6
detailed 5:19
determination 7:9 11:15
determined 13:2 32:16
determining 7:21 26:23 30:16
devastating 17:15
devoid 19:18
Dewitt 6:17
died 17:25 19:4 23:3
different 33:6
difficult 28:6
direct 19:22
discounted 27:7
discourage 32:4
discovery 14:19
discredits 19:13
discretion 24:13
discuss 14:1
discussed 29:7
discussion 6:21 7:22 14:3 30:23
dispute 4:21 8:2 12:20
disregarded 28:9
distress 23:17
District 1:1,1,23 7:5 10:7,14
  26:20 30:21,22
diversity 7:19
divide 10:21
DIVISION 1:2
Docket 5:3,21 11:14 13:5 18:22
  22:15 35:8 36:22
Donald 2:4 4:11 6:6 27:16 29:17
done 29:6 33:21
Dr 2:9
drowning 17:25 33:22
drownings 5:7 14:5 15:19,22
  16:5,18 30:1
due 25:1 31:10
during 15:11 20:18 25:21 27:7
  27:19
duty 13:3 15:4 16:6 29:23
dying 17:24

E
E 37:11,11
each 14:13,20 18:10 24:14 26:2
  26:9 27:22,23 35:21
earned 20:6,11,15 21:11
earning 24:1
earnings 21:11,21,21
easily 17:8
East 2:13
economic 6:19 19:14,15 20:21
  21:2,25 22:7,19 24:2,4 26:3
economist 20:20 24:3
effect 17:15,19 24:24,25 25:2
efforts 17:11 29:15 32:7
egregious 29:24
either 24:11
eleventh 7:18 34:22 35:6,10
emerging 21:18 22:7
emotional 23:7,10
emotionally 18:1
encouraging 32:6
enforce 6:22 31:17
enforced 31:14 35:2 36:8
enter 7:14 32:10 36:13
entered 5:1,2 27:10 30:14
entering 9:22
entirely 16:15 24:15
entirety 30:7
entity 7:14 33:19
Entries 36:22
entry 5:3,21 11:14 13:5 18:22
  22:15 25:7 35:8
equal 15:7

depending 30:4

equivocation 33:1
esoteric 27:24
especially 9:25 29:20
ESQ 2:2,2,8,11,16
Esquire 6:9,12,13,15 14:8,9
  16:25
essence 19:13
essentially 6:4
establish 33:2
established 12:14 14:19 15:8,11
  15:17 24:1
establishing 36:11
estate 1:11,14 4:7 6:6,8,9,10,11
  6:12,14,15,16,16 11:4,5 14:13
  16:22 17:7 18:24 21:22 26:16
  22:18,21 24:7 25:16 36:6,7,15
  36:15
estates 4:25 7:11 8:19 9:5 10:2
  10:20 11:1 12:7 13:4,23 18:21
  22:12 24:18 27:15 30:12 33:1
  35:8 36:9,14
estimated 22:1 25:11
estimates 10:22
Eugenie 1:10,15 4:7 23:3,14,16
  24:1
evaluating 21:18
even 8:12 12:10 19:2 20:13 27:9
  27:19 29:7,16 31:20 35:11
event 17:20 21:8 32:15 34:12
  35:18
evidence 12:8 13:22,24 15:14
  16:14 18:2 19:1 21:5,20 22:5
  24:6,15 31:19
exceed 11:22 34:20
exceeded 17:8
excellent 18:10 25:16 29:21
excess 21:24 35:3
excused 8:11
execute 31:2
executed 8:15
executive 21:15
exhaustive 12:3
exhibits 6:3
exist 8:11 10:11
existed 10:1 15:18 35:16
expectancies 18:9 23:15,20
expectancy 19:20
expected 20:6 24:24
expense 13:9
expenses 12:18
experience 20:4
experiences 29:3
expert 6:5,6,8,10,12,14,15,17,19
  12:15 14:7 16:24 17:1,2 19:22
  20:19,25 21:7 22:1,23 24:3,10
  27:13,16,24 28:24
experts 27:22 28:4 29:8
explicate 5:25
exposure 13:9
express 34:21
extensive 5:19
extent 12:15
extraordinary 17:12
extravagant 18:24
extremely 14:10

F
F 6:6 37:11
faced 9:23
facie 12:9 31:19 33:2 36:10
fact 4:19 6:6,8,9,10,11,14,16,17
  8:16 16:11 27:2,25 28:20
  29:21 30:3,5
factor 25:15 34:8,14
factors 11:18,20 12:2 18:12
  24:17 33:11 36:12
facts 5:13,20,22 14:18 15:3,11
  29:25 37:3

factual 16:25 19:18 21:6
failed 15:14 16:8 28:11 33:3
   36:10
failing 35:5
failure 16:17
faith 5:1 7:3 12:10 13:14 26:21
   30:16,17 31:15,20 33:3,4 34:8
   36:12
falls 33:10
father 17:17,24 25:25 26:6
favor 14:13 24:7 36:6,7,14
Fax 2:4,14,18,22 37:18
fear 29:19 30:12 34:3
February 9:6
Federal 6:1 21:4
Federally 2:21 37:16
feeding 26:16
fees 9:24 36:18
fide 8:1
figure 31:3,5
file 34:25 36:25
filed 5:18 6:3 8:3 9:13 27:21
   30:10 37:2
final 25:7 37:4
Finally 11:7
financial 13:12
find 11:1 14:4,11 19:22 23:10
   27:22 33:16 34:12,15
finding 26:18
findings 4:19 5:13
fingers 26:15
Fire 3:9 10:8
firms 25:17
first 6:13 7:17 10:22 12:1 14:15
   28:13 34:22 35:1
firsthand 17:20
FL 2:4,9,13,17,2,2 37:17
flags 15:22,24 16:1
Floor 2:9
Florida 1:1,8 3:11 7:16,17,18,20
   8:7,17 9:20 10:7,13,17,22
   11:12,18,25 12:13 13:5,8 14:9
   14:18,25 15:2,7 17:10 18:12
   18:16,21 19:3 22:6,8,13 26:13
   26:20 27:3,9 28:1,3 29:22
   30:19,21,22 35:13 36:17
followed 33:22
following 4:18 6:5 8:17 14:9,25
   28:8 36:19
foregoing 37:12
foreseeable 23:25
form 33:18
former 6:13 14:15
forth 4:19
Fortunately 28:2
forward 12:8 31:18
found 8:10 16:16 19:7 22:9
   35:18
four 18:6,9 26:2 30:5
Fourth 10:7,14
fraud 30:18 31:12 33:17
fraudulent 31:4
Frederica 1:10,14 2:16 4:5,14
   6:16 17:5
from 6:5 16:20 18:3,15,19 20:12
   23:5 25:22 26:10,12 30:24
   31:6 33:13,20
front 19:4 23:3
frustration 34:21
Ft 2:13
Fudge 2:3
full 11:1
further 8:7 12:13,24 13:17
   14:14 17:4 18:17 22:24 23:22
   25:15 27:2
Furthermore 35:11
future 21:10 23:25

                    G
general 10:22 11:10,11 13:13
generally 17:10
generously 17:13
gentlemen 27:25
give 16:8 23:22 29:11
given 5:13 8:12 14:18 15:3 17:8
   19:7 22:9 30:7 33:5 34:10
goes 31:23
going 11:21 12:8 31:18
GOLD 1:22
good 4:6,8,10 5:1 7:2 13:14
   26:21 30:16 33:3
great 25:2
Griggs 31:24
Groove 20:1 21:16
Grossman 2:12
ground 8:24
guarded 16:11
guidance 17:17 18:19
guideline 31:25

                    H
Haggard 6:12 14:9 22:24 24:6
Haggard's 24:12
hand 26:16
hang 35:22
hardly 31:4
hat 35:22
having 12:6 21:14,15 32:8
health 18:11
heard 6:5 13:24
hearings 13:23
heightened 15:12
held 5:15,17 10:15 15:2 19:3
   30:18 35:24
her 17:15,20 18:1,7,8 23:3,6
   26:11
heroic 17:11 19:5
heroism 29:24
herself 17:15
highlights 30:23
him 21:14
himself 24:21
hip 20:5
hold 31:13
Holmes 3:8 11:24
honest 10:11
Honor 37:8
HONORABLE 1:22
hook 35:22
hop 20:5
horrific 15:9
hospital 17:24
hour 34:22 35:7,10
house 25:10
Howard 2:16 4:4
howard@abrpom.com 2:18
Hurricane 5:6 9:1 36:5
husband 17:17 23:4 25:24 26:6
   26:11
husband's 18:8

                    I
identifiable 15:18
identified 16:2
II 2:12
ill 23:14
immediately 8:3 23:3,7
immunity 7:15 15:1
importance 15:7 25:2
impose 36:25
impositions 32:4,21
impression 7:17
inappropriate 30:19 31:12
Inc 3:11 30:20
incident 28:15

include 11:20
included 13:18
includes 13:15
including 12:23 16:6 30:8
inconsistent 35:12
inconvenience 13:10
incorporate 5:12,22 35:9
incorporated 37:3
Indeed 15:11
independent 13:18
independently 14:17 22:22
indicated 7:7 29:10 34:16
indicative 22:12
indicia 33:4
individuals 17:2
information 20:19
inherent 32:12,22 33:19
initial 33:13
initially 12:7 31:18
injured 5:23
injury 17:3 18:16,20 24:22
   25:16
inquired 35:16
inquiring 13:14
inquiry 13:15,17
instant 31:1
Instead 9:12 24:12
instruction 18:19
insurance 1:6,18 3:6,8,9 4:20
   5:5,6,10 7:4 8:8,9 9:15 10:8
   11:24 26:14 28:15 30:3 32:5
   32:14,21
insured 5:5 8:3,25 13:9 30:4
   31:3 32:6 35:2
insurer 6:25 9:22 10:3,10 13:6
insurer's 10:15
intangible 25:15 33:11
intangibles 28:5
interest 9:18 36:16
interests 32:2
introduced 27:18
invited 35:14
involved 28:15
involves 4:17 28:4
involving 31:1
Israel 1:9,14 2:11 4:15 6:15
   22:25
issue 7:12,17,21,2,2 8:5,14,16
   16:20 19:11 22:17 24:3
   26:24,25 27:11 28:7 29:23
   30:23 34:5,17,22 35:1,20
issued 5:5 9:1 36:4
issues 5:20 7:9,11 12:21 13:19
   25:8 26:21 28:5,16 36:16

                    J
jamillikan@aol.com 2:23 37:18
January 9:2
jazz 20:2,5 21:19 30:2
Jersey 31:24
joint 18:9 23:20
jointly 28:22 29:5
JOSEPH 2:20 37:15
José 6:8 14:15 17:1 24:20
Judge 1:23 4:6,8 37:7,9
judgment 8:4 9:13 25:4,7 31:2
   36:13 37:4
judicial 9:14 26:18
Judith 6:12 14:16 17:2
July 8:22 26:12
jury 9:11 10:25 11:22 14:4,10
   16:16 17:7,9,13 18:4 19:6
   21:7,23 25:23 26:1,8
just 4:18 33:11

                    K
keep 15:23

kept 27:6
knew 15:5 16:4,9
knowledge 19:23 21:13
known 15:5 16:4,9 20:1 26:5
   31:17

                    L
lack 6:19 12:9 27:8 31:20 34:11
lacks 8:8
Lamonica 6:6 27:16 29:17
large 9:24 14:13 28:16 29:2,10
   29:13 31:5
larger 27:10
Las 2:12,13
last 23:23
Lastly 34:17
later 17:24
Lauderdale 2:13
Lauren 2:2 4:9
law 4:20 5:20 6:21 7:16,19 8:7
   9:20 10:17,22 11:11,12,15
   12:13 13:5,8 18:21 22:13,14
   25:17 35:13,16 36:17
LAWRENCE 2:16
lawsuit 12:19
lawsuits 9:4,8
lawyer 24:21
lcurtis@buckleyandfudge.com
   2:5
learn 17:24
least 24:2
leaves 7:8
leaving 11:2 19:11 22:17 32:14
Lee 6:12
left 9:9 24:13
legal 5:13,23 6:10,12,1,4 8:6,8
   9:20 12:20 14:20 19:18 32:10
legislative 27:19
Legislature 27:3,9,15,17 28:3
   28:23 29:5 30:7,9,13
length 33:17
less 19:13 21:3 35:17
Let 11:10
letter 8:20,23 9:6
level 15:3
liabilities 29:14
liability 8:14 11:21 12:16 13:16
   15:8,12 28:20 29:24 31:6,9
liable 11:1 14:4,11
liberty 30:24
licensing 20:9
life 18:9 19:20 23:8,15,17,19,20
lifeguard 15:21
lifeguards 15:17,18,20
lifeless 23:6
lifetime 23:13
light 29:20 35:19
like 21:3 22:7 28:18
likely 14:10 17:7 18:4 19:7
   20:11,15 21:23 24:7 29:9,11
   30:12
Limine 36:20
limit 8:21 34:1,20
limited 13:22
limiting 34:10 35:5
limits 35:5,24
list 12:2
litigated 12:24 26:21
litigation 7:1 13:10 34:6
little 21:11 31:7,9
lobbyist 29:17
local 30:8
lose 31:7
loss 17:16 18:14 19:6 20:21 23:8
   24:4 26:15 34:3
losses 9:17
lost 18:18
love 17:17

low 19:7

**M**

machine 3:8 11:24 26:16,17
made 7:2 9:2 11:16 26:10
magnitude 24:24
majority 30:10
make 12:9 18:22 31:19 35:14
makes 32:11
making 16:10
management 25:3
manifestly 18:25
manner 16:19 19:5
map 15:8 29:23
March 5:2,10 25:23 34:24
Marine 3:9 10:8
MARK 2:8
marriage 23:12
married 17:18
Master 13:19
matter 4:22 9:17 37:13
matters 12:15 14:1 36:25
may 18:14,18 27:19 31:9,14
    34:19 36:17
mbuckley@buckleyandfudge....
    2:5
meant 12:2
meet 36:10
memo 22:14
memorandum 1:22 4:19
mental 18:15,19
mentioned 24:21 29:7
merely 35:16
merit 8:8 19:18 27:23 36:20
met 33:2 36:10
methods 12:25
Miami 1:2,8,9,15 2:8,8,9,21,22
    4:12 5:1,4,11 6:9,13 7:13,25
    8:24 9:2,7,9 11:19 12:4 14:15
    15:16 16:3 17:3 20:23 37:17
    37:17
Miami-Dade 14:10
Michael 2:2 6:11,15 14:8,8
    16:25 22:24
might 11:22 30:3
Mike 4:8
MILLIKAN 2:20 37:15
million 4:24 8:20 10:4 11:4
    16:22 17:8 18:5,23 19:5,10
    20:6 21:24 22:2,2,3,5,5 24:8,8
    24:18 25:24 26:1,2,3,9,14,18
    33:10,13,14 34:20 35:3 36:7
    36:14
minor 18:17
mistaken 10:10
moment 11:2 19:11
money 20:20,22 30:9 32:19 33:8
monitor 32:20
month 8:22
Monticello 1:6,18 4:9 5:5,10
    7:11,23,24 8:3,13,20,23,25
    9:3,6,13,15,16 10:4,5 12:7,11
    12:21 13:3 19:9,13 21:19
    22:19 24:5,10,12 27:13 28:11
    32:9,11,17 33:3,7,9 34:2,7,9
    34:17,21,25 35:3,4,15,22 36:2
    36:5,8,10,1,4 37:1
Monticello's 6:17,18 8:6,9,16
    19:17 20:25 27:5 28:24 29:8
    34:11
moot 36:21
more 8:22 18:5,23 19:2 21:6
    28:7 31:3
Moreover 15:20
morning 4:6,8,10,17
morning's 4:3
mother 17:23
motions 37:21,23 36:19,20,22

motivating 34:14
municipal 11:18 12:3 25:2
municipalities 32:12
municipality 32:23
musician 20:17 30:2
musicians 21:19
must 6:23 7:19 32:20 34:21

**N**

namely 21:1 33:7
narrow 28:7
necessary 5:25 25:3
necessity 11:9
need 5:24 10:20 35:20
negative 13:10 24:25
negligence 13:25,25 14:20,21
negligent 14:19 16:17,17,19
negotiated 30:16 32:18 33:12,20
negotiating 20:23 33:8
negotiation 19:12 25:6 33:17
negotiations 25:22 27:7
neither 16:18 23:14,15 28:15
net 20:7,7
never 17:18 31:8 35:14
New 3:6 25:7 20:17 23:23 31:24
newspaper 25:23
next 10:18 16:20 22:16 24:16
    26:25 33:22
none 27:22
noneconomic 17:14 18:5,23
    19:10 21:25
Nonetheless 19:9 22:22
nonjury 5:3,15,18 6:2
Norjh 2:3,21 37:17
Northern 3:6 7:4 26:14
note 10:9 11:11 21:19
nothing 31:7
notwithstanding 8:13 23:11
November 5:17
number 7:10 20:2
numerous 6:3 27:21

**O**

Oakland 2:17
objection 6:4
objective 11:17 16:13 28:12
objectively 10:25 11:5 14:5
    16:22 17:6 18:3 22:18 28:10
    34:2,16
obligated 9:21 31:8
obligations 9:15
obtain 31:5
occurred 5:7 15:22
ocean 5:8 23:5 33:22
October 5:16 26:7
offer 27:24 33:13
offering 9:12
OFFICER 4:1
Official 2:20 37:16
offset 25:4
Olas 2:12,13
old 18:7 23:16
Olin 6:15 14:8 16:25 24:11
Olin's 21:25
one 8:22 23:12 28:19 31:1
one-and-a-half 33:13
ongoing 29:15
only 15:12 17:24 19:19
operation 26:17
operational 15:3
operator 26:16
opined 24:6
opinion 8:18 14:18 15:2,8 21:1,2
    22:1 30:24,25
opinions 17:21 21:7 27:24
opportunities 20:3
opportunity 34:4
oral 1:22 4:19 5:23,25 6:5

order 4:17 5:2,10,12 13:8 14:2
    28:16 29:14 31:5 36:13
orders 36:21
ordinarily 12:14
ordinary 30:18 31:11
other 4:13 5:24 12:17 15:1 17:9
    20:3,5 21:20 24:16,25 28:5,14
    28:18,22 35:6 36:20
otherwise 8:7 34:9
other's 27:22
out 12:9 15:23 25:24 26:15
outside 9:25 25:14
outstanding 25:17 36:19
out-of-state 22:11
over 17:8 19:6 20:7,8,13 21:17
    29:18,19 30:11 32:15 33:12
    34:13
overcome 17:21
overreaching 32:4,21,25
owed 16:6
own 9:3,9 10:5,12 14:23 20:8
    21:15 22:4 24:8 30:9 32:19
    33:8 34:21

**P**

Page 3:2,6 10:9 11:25
Pages 1:12 11:14 13:5 18:22
paid 26:18 37:2
pain 18:15,19
Papy 2:8 4:11,11
parental 18:18
Park 2:17
part 5:13,23
particular 26:17
particularly 17:8 19:4
parties 5:18 6:3,22 7:4,10 8:15
    9:14 11:11 12:13,20 27:11,21
    30:19 32:3,24
partner 23:8
partnership 23:13
parts 10:21
party 6:23 31:17
passage 34:13
passed 27:9,15,17 28:3,14 29:9
    29:20 30:6,11,13
passing 28:8
past 21:12
Paul 3:9 10:8
pay 31:8
pending 9:4 34:24
people 15:23
per 19:6 20:7,9,10,15,1 6 24:2
percent 14:11 20:11
perform 17:23
performed 23:6
performing 20:4
peril 35:23
period 33:12
permitted 12:21 35:11
permitting 35:9
person 11:17
personal 1:10,15 17:3 19:23
    24:22 25:16 29:21
personally 25:17
persuasive 22:12
pertaining 10:23 13:16
pertinent 18:12
Peter 6:18 20:25
Petersburg 2:4
Phase 4:20,22 5:14,15,23 6:2
    7:7,12 12:21 13:23 27:12
    34:23 36:2
phone 4:13
physically 23:14
Physicians 3:11 30:20
pick 32:14
place 21:6 24:19
placed 15:8

placing 20:20
Plaintiff 1:7 2:2
plaintiffs 25:19
plaintiff's 14:20 31:10
planned 23:24
plead 35:6
pleadings 35:15
please 4:3
pled 35:12
point 7:18 10:5,17 28:24 32:11
points 7:10
Poleyeff 1:9,10,15,15 2:11 4:7
    4:15,15,22,5 6:11,16 8:19,23
    9:5 10:19 11:4 12:23 14:12
    16:19 17:12 22:14,16,18,21
    22:25 23:1,3,4,14,16,17 24:1
    24:7 29:19,25 30:14 33:14
    36:7,15
Poleyeffs 15:15 16:7
Poleyeff's 23:10,22
Poleyeff/Breaux 28:19
policies 15:25 36:4
policy 5:5 8:3,20 9:1,15 10:3
    32:3 33:25 34:20 35:5,13,24
politics 28:5
Pomerantz 2:16,16 4:4,4 37:8
position 8:6 12:4 19:17 34:10
possible 22:3 28:9
posted 15:22,24
posting 16:1
posture 15:9
potential 9:24 21:21
potentially 13:11
precedential 24:24
prejudgment 36:16
prejudicial 35:10
present 20:20,22 24:2,4
presented 16:14 21:20 24:10
pretrial 5:19 11:13 34:18 35:1
    35:15
previously 5:2 27:20
prima 12:9 31:19 33:2 36:10
primarily 4:23
primary 7:12
prior 5:12,18 26:11 28:14 29:3
probabilities 21:18
probable 21:10
probably 27:25
problem 31:11
Procedure 6:1
procedures 6:7
proceeded 10:5
proceeding 4:23 7:12 12:22
proceedings 4:18 5:9,14,24 7:8
    15:12 27:12 36:25 37:10,13
process 13:18 14:19 16:21
    20:18 27:4 28:14 35:19
processing 11:9
produce 19:25
produced 30:5
producer 21:16
producing 20:10
production 12:8 31:19
projects 29:15
proof 12:10,13 31:21
properly 9:25 10:17 26:23
proposition 12:12
protected 10:6 16:11
protecting 32:6
protection 18:15
prove 6:23
provide 33:25
provides 18:13,17
proximate 16:17
prudent 10:25 14:5 15:13 16:15
    22:23 34:10
prudently 33:23
public 15:4,8 16:1 32:3 33:19

35:13
**publicity** 13:10 25:1
**published** 5:9
**pulled** 17:22 23:5
**punishing** 33:24
**purported** 35:2
**purpose** 33:24
**put** 30:24 34:9
**P.A** 2:12

**Q**

**qualified** 5:4 8:2 27:24 28:1
**qualify** 8:25
**qualities** 29:21
**quote** 32:1,1
**quoting** 30:24

**R**

**R** 37:11
**Rabbi** 6:15 22:25 23:4,10,14,17
    23:22 29:25
**radio** 20:2
**raise** 12:21 35:1
**raised** 13:20 34:22
**range** 22:10 24:8
**rather** 13:23 19:2 23:12 27:24
    32:11
**ratings** 25:3
**reach** 33:6 34:4 35:20
**reached** 20:2 33:15,16
**reaches** 20:25
**real** 10:1 32:17,18 34:3,14
**really** 33:9
**realm** 33:10
**Realtime** 2:21 37:16
**reason** 33:11
**reasonability** 10:23 11:12 22:20
    23:21
**reasonable** 5:1 7:2,13 10:20,25
    11:5,8,16,17 12:3 14:5 16:15
    16:22 17:6 19:3 21:22 22:10
    22:18,23 24:15 29:19 30:11
    33:17 34:16 35:21
**reasonableness** 12:9,14,16
    13:14,15 15:13 26:21 27:5
    31:20
**reasonably** 18:4 20:6 26:23
    28:21 32:1
**reasons** 13:22 27:22 29:6,10
    34:15 35:7 36:1,13
**rebut** 24:11
**Reciprocal** 3:11 30:20
**recognition** 19:15
**recommended** 14:17
**record** 6:4 14:23 18:2 21:15
    24:1 32:23 36:25 37:2
**recording** 20:14
**records** 20:9,12
**record-setting** 28:9
**recover** 18:14,18
**recovery** 35:5
**reduced** 24:4
**refer** 22:14
**reference** 35:9 37:4
**referred** 30:19
**refiled** 27:19
**refusal** 7:24 8:9,17 33:25
**refused** 6:25 7:23 36:3
**refusing** 35:23
**regard** 7:10 19:17 29:7 37:1
**regarded** 28:19
**regarding** 8:16 11:12 13:20
    17:16 22:15 23:2 26:5
**reject** 8:6
**rejecting** 8:23
**related** 36:20
**relating** 36:16
**relation** 21:11

**relationship** 31:10
**relationships** 28:5
**release** 31:6
**released** 19:25
**reliance** 24:19
**relief** 8:13
**relies** 27:13
**relieve** 13:9
**rely** 14:14 27:15
**remaining** 7:8,11 23:17,19
    30:25
**remand** 8:18 14:10 15:9 25:11
**rendered** 21:23 26:8 29:2
**Rentals** 5:6 9:1 36:5
**replete** 18:2
**report** 20:19 24:3 25:22 26:12
**reported** 2:20 22:6 26:4
**reporter** 2:20,21 36:24 37:16,16
**Reporter's** 3:3
**represent** 20:22
**Representative** 1:10,15
**represented** 17:3
**reputations** 25:18
**requested** 13:23
**required** 5:25 12:18
**rescue** 17:21
**reserve** 25:3 36:16
**resolve** 8:4 32:7
**resolved** 9:18
**resorting** 25:5
**resources** 25:10
**respective** 4:24
**responses** 35:8
**responsible** 35:24
**rest** 31:21
**restate** 5:24 11:10
**rests** 12:10
**result** 18:2 22:12 33:6
**returned** 14:12
**review** 13:19 26:13
**reviewed** 18:3 32:23
**rewarded** 17:13
**Rickey** 6:7 19:21 21:4
**right** 4:16 13:7 32:10
**rights** 9:14,21
**rip** 15:15,17,22 16:1,2,5 17:21
**rise** 4:1
**risk** 9:10 10:5,12 25:3,5 32:12
    34:10
**risks** 11:21
**road** 15:8 29:23
**Robert** 6:17 27:14
**Roth** 2:12
**roughly** 19:5
**royalties** 20:7
**RPR-CM-FCRR** 2:20 37:15
**rule** 6:1 13:13 21:5 32:1
**ruled** 34:5
**ruling** 5:23 30:4
**rulings** 5:25 30:25 36:21

**S**

**S** 1:22
**same** 32:5
**satisfied** 22:8
**save** 17:11
**says** 30:25
**School** 23:24
**Schultz** 6:7 19:21 21:4,13,17
**Schultz's** 21:6
**second** 7:22 10:24 30:21,22
**secretary** 23:24
**SECURITY** 4:1
**see** 5:24
**seeking** 8:4 31:17
**seems** 34:7
**sent** 8:20,23
**Sentinel** 25:22

**separated** 26:10
**served** 21:15
**session** 4:3 27:19
**sessions** 30:5
**setting** 4:19 29:14
**settle** 8:21 10:3 13:7 15:13
    24:17 26:24 33:25 35:23
**settled** 12:5 19:13 25:13 28:16
**settlement** 4:24 7:2,14 11:7,22
    16:21 20:18 22:17,20 23:21
    24:1,1,14 25:21 26:15,25 27:6
    29:4 30:15 31:2,5,9,14,16
    32:6,14,22 33:12,16 34:15
    35:17,21 36:5
**settlements** 10:19 11:3 30:14
    33:2,7 34:4
**settling** 12:19,24
**seven** 26:15
**shock** 18:25 23:5
**shortened** 23:15
**show** 28:12 33:3
**showing** 12:9 31:20
**Shukat** 6:18 20:25
**sideman** 20:16
**signed** 21:14
**significance** 17:18
**significant** 9:10,24 19:2 25:1,4
**significantly** 27:7
**similar** 31:25
**simply** 31:4 33:23
**since** 34:24
**situation** 15:12
**six** 20:7,8,13
**six-album** 21:14
**size** 25:19
**Smith** 6:8 14:15 15:9 17:1 22:2
    23:1 24:20 28:18,20 29:1,12
    34:12
**son** 23:1,9
**song** 20:8
**sort** 32:25
**sought** 8:13 29:12 34:25 35:18
**South** 17:10
**SOUTHERN** 1:1
**sovereign** 7:14,15 15:1
**So.2d** 3:7,8,10,11 7:5 10:8,14
    11:25 30:20
**special** 13:17,19 27:4,8 35:19
**specialized** 29:17
**specializing** 24:21
**speculative** 19:15 22:10
**spending** 30:9
**spent** 25:9
**sponsor** 29:13
**spouse** 18:13
**St** 2:4 3:9 10:8
**standard** 11:17 30:18 31:11
    33:21
**standards** 21:5
**star** 20:15
**start** 6:21
**started** 19:12
**state** 7:1,18,25 8:18,19 9:10,12
    9:16 27:9 28:1 36:3
**stated** 10:7,17 31:24 35:7 36:1,2
    36:13,21
**statement** 5:19 11:13
**States** 1:1,23 2:20 37:16
**stations** 15:21
**status** 30:2
**statute** 18:16,17
**statutory** 7:15 11:9 27:7 32:15
**stay** 9:16,19
**Ste** 2:17
**Steil** 3:11 30:19
**still** 9:23
**stipulated** 32:15
**stipulates** 31:5

**stipulation** 5:19 34:19 35:1
**STITT** 2:2
**strategies** 12:25
**Street** 2:3 15:5,16,19,20,21,24
    16:5,10
**strength** 29:22 31:10
**strenuously** 22:19
**strong** 34:14
**stronger** 28:21
**studio** 20:16
**subject** 8:4 9:13,15 11:16 29:4
**subjective** 11:18,20 16:13 24:16
    26:22
**subpart** 18:16
**subrogated** 12:6
**subsequent** 23:11
**substantial** 29:20
**substantive** 27:11 35:13
**success** 19:24 20:1 21:18 25:18
**successful** 21:2
**suffered** 23:7
**suffering** 18:15,19
**sufficient** 12:8 31:19
**sufficiently** 27:23
**suggests** 32:17 34:8
**Suite** 2:13,21 37:17
**sum** 16:13 36:1
**summarize** 24:14
**summary** 36:9
**Sun** 25:22
**Sunrise** 2:17
**support** 8:7 12:11
**supported** 17:4 22:24 23:9
    24:15,17 28:22 29:5,18
**supporting** 34:14
**supports** 9:20 14:23 15:14
**Supreme** 7:20 8:17 10:13 14:9
    14:18,25 15:2,7 22:8 29:22
    31:24
**surrounding** 25:1 31:16
**surviving** 18:13
**survivor** 19:6
**survivors** 14:13 18:6,9 19:4
**Susan** 6:10 22:25
**suspect** 31:3
**swimming** 16:1,11

**T**

**T** 37:11,11
**TABLE** 3:1
**tainted** 30:17 31:15
**take** 30:23
**taking** 21:24
**talent** 19:23
**talents** 21:13
**Tallahassee** 29:17
**teleconference** 4:11,14,15
**tempered** 13:13
**ten** 23:23 37:2
**terms** 11:5 16:22 17:14 21:2
    22:19
**test** 12:3 13:14 14:2 32:17 33:6
**testified** 17:14,19 23:4 25:21
    29:2
**testify** 12:15 19:22 21:4
**testimony** 6:5 14:8,14 15:16
    16:24,25 17:4 19:21 21:7,9,20
    22:23,24 23:9,22 24:10,12,20
    27:13,16 29:11,16 34:12
**Thank** 4:13,16 37:5,7,8
**thanks** 37:9
**their** 8:23 17:23,24 23:2 25:17
    33:2 36:10
**third** 10:18 11:2 20:1 26:20
**Thomas** 3:9 10:8
**though** 7:20 12:10 31:21
**three** 17:15,20,23 18:8 29:25
**through** 11:14 12:14 18:22

21:10 25:6,12,17 27:3 29:5 30:6 33:16
**tides** 17:22
**time** 15:19 18:7 19:19 20:23 23:18 28:13 29:19 30:2,11 32:5 34:22 35:1
**timely** 35:5
**timing** 28:5
**today** 37:5
**today's** 36:24
**together** 5:12 16:25
**tortfeasor's** 11:21
**total** 24:3 33:10 35:18
**totality** 16:14 22:4 33:5
**touring** 20:3,8
**tourism** 24:25
**tourists** 29:22
**towards** 32:6
**tractor** 26:7
**tragic** 17:19
**trailer** 26:7
**Trammell** 6:17 27:14
**transcribe** 36:24
**transcript** 1:22 37:1
**transcription** 37:13
**transcripts** 37:4
**Transporting** 26:5
**traumatic** 17:19
**traumatized** 18:2
**trial** 5:3,15,18 6:2 11:21 21:8 24:21 25:18 34:23
**true** 22:6 33:4
**try** 25:11
**turn** 7:22 10:18 14:3 16:20 21:22 22:16 25:6 26:25 27:15
**Turning** 11:10 32:9
**two** 5:7 7:9 15:21 26:9 27:25 28:14
**type** 7:14
**typically** 30:10

**U**

**ultimate** 12:10 31:21 36:11
**ultimately** 27:17 33:15 35:12
**unavailing** 10:16
**unconscious** 17:22
**uncontested** 5:20,22 24:5
**uncontradicted** 14:7
**under** 5:5 6:1 8:3,7,8,25 9:15 11:8,15 12:13 13:4 14:2,5 18:12,21 20:12 21:4 22:13,13 27:1 28:12 29:8 36:4,12,17
**underlying** 7:1,25 8:18
**unduly** 35:10
**unenforceable** 30:17
**unequivocally** 10:4,15 14:23
**unguarded** 15:16 16:12
**unilateral** 34:25
**unilaterally** 34:18
**United** 1:1,23 2:20 37:16
**unreasonability** 28:12 36:11
**unreasonable** 19:11,16 24:11 27:1 28:10 31:15 35:18
**unsupported** 19:1
**until** 9:17
**untimely** 17:16
**upheld** 26:20
**Uptown** 20:1 21:16
**use** 12:14 25:14
**utilized** 12:25
**utilizing** 11:17

**V**

**v** 1:17 3:6,8,9,11 5:11 7:4 10:8 11:24 26:14 30:19 31:25
**valid** 14:21
**validity** 11:12
**value** 20:20,22 24:2,4

**various** 27:22
**verdict** 9:24 11:22 13:11 14:13 17:7 22:3 24:7,24 25:1,2,13 25:24 26:8 27:10 28:9 29:2,10
**verdicts** 17:9 25:19 29:4,13
**very** 14:12 28:16 31:9
**Via** 4:11,14,15
**victim** 19:4
**view** 13:15 17:6,13 26:22 33:7
**vigorously** 33:12
**virtue** 16:10
**vs** 1:8

**W**

**W** 2:17
**wait** 9:21
**waived** 35:4
**warn** 15:4,14 16:6,17
**warning** 15:22 16:1,8
**watched** 17:20,23 23:4
**water** 15:23
**way** 23:15 36:9 37:4
**weight** 21:6 23:22 29:11
**Weinstein** 6:13 14:16,24 17:2 22:1 23:1 25:21 26:12 28:19 28:20 29:1,12 34:13
**Weinstein's** 15:10
**well** 6:8 12:24 14:24 19:24 20:19 22:1 23:1,7 24:9 35:7
**well-qualified** 19:22 21:4
**were** 5:1,9,16,20 6:3 8:15 10:20 11:5,16 15:17,24 16:2,19 17:12 18:1,8,10 23:14 24:11 24:16,19 26:21,23 27:25 28:16 29:22 30:15 33:3,7,16
**We're** 37:5
**while** 7:10 19:10 20:25 22:5 34:7
**widow** 26:1,10
**wife** 23:5,23
**wife's** 23:18
**Williams** 20:20 24:3
**willing** 10:2
**wish** 35:14
**witness** 6:7,8,8,10,11,11,12,14 6:15,16,17,18,19 27:23
**witnesses** 6:6 12:15
**witnessing** 17:19 30:1
**WL** 5:9 26:4
**Wolf** 6:10 22:25
**working** 23:23,25
**world** 32:18
**writing** 20:8
**written** 9:3
**wrongful** 8:1,11 9:4,10,17 13:3 14:1 17:9 18:13 21:8
**wrongfully** 6:25 7:23
**wrongly** 36:3

**Y**

**Yaffa** 2:11 4:6,6 37:9
**yamilexmorales@miamibeach...** 2:10
**year** 19:6 20:7,9,10,15,1 6 24:2
**years** 18:7,9 19:6,19,20 20:7,8 20:13 21:17 23:4,16,17,18,19 23:23 29:18 33:13
**year-to-year** 27:18 28:6
**York** 3:6 7:5 20:17 23:23
**young** 30:1

**Z**

**Zachary** 1:11,14 18:10 19:19,23 21:9,14 29:24
**Zebra** 20:12

**S**

**$1** 8:20 10:3 20:6 34:20 35:3
**$1.2** 26:3
**$1.5** 26:8
**$10** 17:8 21:24 22:2,3,5 26:1
**$10,000** 20:9
**$10.5** 33:13
**$100,000** 20:15
**$15** 22:2,5
**$15,000** 20:9,9
**$175,000** 20:13
**$2** 33:14
**$2,561,834** 20:21
**$20,000** 20:10
**$200,000** 7:15 11:8 15:1 20:15 27:2
**$25** 25:24
**$25,000** 24:2
**$250,000** 20:16
**$3** 24:8
**$3.5** 26:2
**$327,000** 25:9
**$33,000** 19:5
**$405,000** 20:7
**$45,000** 20:16
**$487,000** 24:4
**$5** 4:24 11:3 16:22 18:5,23 19:5 19:10 24:8,18 36:6,14
**$5.75** 33:10
**$500,000** 25:12
**$571,250** 20:8
**$6,269,450** 20:21
**$750,000** 4:24 11:4 22:18,20 24:18 36:8,15
**$8.5** 26:14,18

**0**

**06-20459** 4:2
**06-20459-CIV-GOLD** 1:3

**1**

**1** 1:12 6:24 7:7 20:2 36:2
**10** 3:10
**10th** 5:2
**10:54** 37:10
**100** 14:11
**101** 2:17
**11** 1:9 3:8 26:2
**11th** 5:10
**11-1** 1:7 2:21 37:17
**117** 3:10 10:9
**12** 18:8
**12/11/09** 37:10
**121** 10:9
**13** 18:22
**14** 18:8
**14th** 5:16
**15th** 5:16
**15.1** 23:19
**16** 11:14 18:22 26:9
**16th** 2:3
**165** 3:8 11:25
**168** 11:25
**17** 11:14 26:2
**1700** 2:9
**19** 26:3,9
**19th** 5:16
**19.2** 23:17
**1983** 12:1
**1984** 30:21
**199** 5:3

**2**

**2** 4:20,22 5:14,15,23 6:2,25 7:12 12:21 13:5,23 18:16 27:12 34:23
**2001** 26:7

**2003** 26:4
**2005** 8:22
**2006** 7:5 9:2,6 25:23 26:13 34:25
**2007** 30:5
**2008** 30:5
**2009** 1:9 5:2,9,10,16,17
**21st** 15:20
**22** 9:6
**22455998** 26:5
**223** 36:22
**24th** 5:17
**248** 13:5
**25** 20:11 29:18
**252** 36:22
**253** 36:22
**254** 36:22
**255** 5:21 11:14
**270** 36:22
**272** 3:10 10:8
**276** 36:23
**282** 10:14
**285** 35:8
**286** 18:22 22:15
**29th** 8:22 15:5,16,19,21,2 4 16:5 16:10

**3**

**3** 7:2 13:5
**3rd** 5:16
**30** 3:11 21:17 25:23
**305.523.5588** 2:22 37:17
**305.523.5589** 2:22 37:18
**305.673.7470** 2:9
**31** 26:13
**31st** 9:2
**33-year-old** 26:16
**33128** 2:22 37:17
**33139** 2:9
**33301** 2:13
**33351** 2:17
**33705** 2:4
**35th** 15:20
**350** 2:13
**36** 18:7 19:19
**36.9** 18:9 19:6,20
**37** 3:3
**37-year-old** 26:6

**4**

**4th** 2:9
**400** 2:21 37:17
**44** 23:4
**443** 3:8 11:25
**448** 3:11 30:20
**45-year-old** 26:1

**5**

**52(a)(1)** 6:1
**535** 3:7 7:5
**589-592** 3:11 30:20

**6**

**6** 26:2
**636** 10:14
**650** 2:3
**66** 23:16
**667454** 5:9
**68** 23:18

**7**

**7** 3:7 10:9 18:8
**702** 21:5
**727.490.3100** 2:4
**727.490.3101** 2:4
**768.21** 18:16
**7800** 2:17

| 9 |
|---|
| **919** 3:6 7:5 |
| **954.572.7200** 2:17 |
| **954.748.6488** 2:18 |
| **954.764.1866** 2:14 |
| **954.767.8200** 2:13 |
| **960** 2:13 |